## AMERICAN TOBACCO COMPANY v. WERCKMEISTER.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 28.   Argued October 30, 1907.—Decided December 2, 1907.

In construing a statute, while the court must gain the legislative intent primarily from the language used, it must remember the objects and purposes of the statute and the conditions of its enactment so as to effectuate rather than destroy the spirit of that intent.

The purpose of the copyright statute is not so much to protect the physical thing created as to protect the right of publication and reproduction, and the statute should be construed in view of the character of the property intended to be protected.

In the case of a painting, map, drawing, etc., the copyright notice required by § 4962 Rev. Stat. need not be inscribed upon the original article itself; the statute is complied with if the notice is inscribed upon the published copies thereof which it is desired to protect.

In the United States, property in copyright is the creation of Federal statute passed in the exercise of the power vested in Congress by Article I, § 8, of the Federal Constitution, to promote the progress of science and the useful

arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries, and the statute should be given fair and reasonable construction to effect such purpose.

The Federal copyright statute recognizes the separate ownership of the right of copying from that which inheres in the physical control of the thing itself and gives to the assigns of the original owner of the right to copyright the right to take out copyright independently of the ownership of the article itself.

The property of an author or painter in his intellectual creation is absolute until he voluntarily parts therewith. While the public exhibition of a painting or statue where all can see and copy it might amount to a publication, where the exhibition is made subject to reservation of copyright and to restrictions rigidly enforced against copying, it does not amount to a publication.

In a suit brought in replevin under the New York Code to recover infringing copies of the plaintiff's copyrighted article it is too late to object to the form of remedy on the motion for new trial.

Adams v. New York, 192 U. S. 585, and Hale v. Henkel, 201 U. S. 43, followed to effect that defendant's rights under the Fourth and Fifth Amendments were not violated by the seizure of infringing copies of copyrighted articles or by the use thereof as evidence.

146 Fed. Rep. 375, affirmed.

THIS is a writ of error to the Circuit Court of Appeals for the Second Circuit, seeking reversal of a judgment affirming the judgment of the United States Circuit Court for the Southern District of New York in favor of the defendant in error, adjudging him to be entitled to the possession of 1196 sheets, each containing a copy of a certain picture called "Chorus," the same representing a company of gentlemen with filled glasses, singing in chorus. The painting was the work of an English artist, W. Dendy Sadler. The defendant in error claimed to be the owner of a copyright taken out under the laws of the United States.

The judgment was rendered under authority of § 4965, as amended March 2, 1895. 28 Stat. 965; 3 U. S. Comp. Stat. p. 3414.

In January, 1894, by agreement between the artist and Werckmeister, the defendant in error, it was agreed that the painting should be finished by March 1, and then sent to Werckmeister to be photographed and returned to Sadler in time to

exhibit at the Royal Academy in 1894. The painting was sent
to Werckmeister at Berlin, where it was received on March 8,
1894, and was returned to Sadler in London on March 22, 1894.
On April 2, 1904, the artist Sadler executed and delivered the
following instrument:

"I hereby transfer the copyright in my picture 'Chorus' to
the Photographische Gesellschaft, Berlin (The Berlin Photo-
graphic Company), for the sum of £200. London, April 2,
1894.          (Signed)   .          W. DENDY SADLER."

Werckmeister was a citizen of the German Empire, doing
business in Berlin, Germany, under the trade name of "Photo-
graphische Gesellschaft," and did business in New York city
under the name of the "Berlin Photographic Company."

The Photographische Gesellschaft of Berlin, by letter dated
March 31, 1894, received on April 16, 1894, deposited the title
and description of the painting and a photograph of the same
in the office of the Librarian of Congress, the intention being to
obtain a copyright under the act of Congress. U. S. Comp.
Stat., v. 3, p. 3407. After the painting was returned to London
it was exhibited by Sadler at the exhibition of the Royal Acad-
emy at London, and was there on exhibition for about three
months; the exhibition opening the first Monday of May and
closing the first Monday of August, 1894. The exhibition was
open to the public on week days from 8 A. M. to 7 P. M. upon
the payment of the admission fee of one shilling, and during
the last week was open evenings, the entrance charge being
sixpence.    There was a private view for the press on May 2,
and on May 3 up to one o'clock, and the remainder of the day
was for the Royal private view. There was also a general
private view on May 4. The members and the associate mem-
bers of the Royal Academy and the artists exhibiting at the
exhibition and their families were entitled at all times to free
admission, and they as well as the public visited the exhibition
in large numbers.

During the time that the painting was shown at the exhibi-
tion it was not inscribed as a copyright, nor were any words

thereon indicating a copyright, nor on the substance on which it was mounted, nor on the frame, as required by the copyright act (3 U. S. Comp. Stat., p. 3411), if the original painting is within the requirements of the law in this respect.

The painting while on exhibition was for sale at the Royal Academy, but with the copyright reserved, which reservation was entered in the gallery sale book. The by-laws of the Royal Academy provided "that no permission to copy works on exhibition shall on any account be granted." The reasons for the by-law, as it appears upon minutes of the Academy, are as follows:

"That so much property in copyright being entrusted to the guardianship of the Royal Academy, the council feel themselves compelled to disallow, in future, all copying within their walls from pictures sent for exhibition."

The photogravures of the painting were placed on sale in June, 1894, or in the autumn of 1894; those photogravures were inscribed with the notice of copyright.

Mr. Sadler, the artist, afterwards, in October, 1899, sold the painting to a Mr. Cotterel, residing in London, England, since which time, so far as has been shown, it has been hanging in the dining room of the house of that gentleman.

On June 20, 1902, Werckmeister commenced an action, by the service of a summons, against the American Tobacco Company, plaintiff in error, and on the same day a writ of replevin was issued out of the Circuit Court of the United States for the Southern District of New York, directed to the marshal of the same district, requiring him to replevin the chattels described in an annexed affidavit. Under the writ the marshal seized upon the premises of the American Tobacco Company 203 pictures. On July 23, 1902, Werckmeister caused another writ of replevin to issue out of the same court, directed to the marshal of the Western District of New York, under which writ the marshal seized 993 pictures.

An amendment to the complaint set forth the seizure of the pictures. The copies seized were adjudged to be forfeited to the plaintiff Werckmeister and to be of the value of $1,010.

The judgment rendered in the Circuit Court was taken upon error to the United States Circuit Court of Appeals and there affirmed.   146 Fed. Rep. 373.   The present writ of error is prosecuted to reverse the judgment of the Court of Appeals.

*Mr. William A. Jenner* for plaintiff in error:

Plaintiff below (defendant in error) had no right to maintain the action because of omission to give the notice of copyright prescribed by § 4962 on the original painting exhibited at the Royal Academy.

The statutory notice of copyright is most effectively given in the case of a painting when it is inscribed upon "some visible portion *thereof*, or of the substance on which the same shall be mounted."   Every one who sees the painting sees that notice, or can see it, if he looks.

Inscription upon a copy and not upon the original is futile, if one sees only the original and does not see the copy.   To be completely effective the notice should be inscribed upon copies as well as upon the original.

But in the case of a painting, there may be no copies, replicas or reproductions, and the author or proprietor may wish only to prevent copying and to preserve the painting unique.   In that case, unless the statutory notice is inscribed upon the painting or its mount, no notice at all would be given.   But the statute does not distinguish between those cases where the copyrightable thing, *i. e.* the painting, is kept unique and those cases where copies or reproductions are made.   In both cases there must be compliance with the same requirements.

In the case at bar the *thing* copyrighted was the *painting*. Plaintiff's photogravure was not copyrighted at all and was protected only by virtue of the copyright of the painting.

Section 4962 should be construed so as to promote its apparent object, that is to require the notice to be inscribed upon the original painting.   Its plain import is that the copies of every edition of the book published is to have a notice inserted in them; if a painting, the notice is to be inscribed upon

a visible portion of it or of its mount, without regard to publication.

Where the language is plain and unambiguous a refusal to recognize its natural, obvious meaning would be justly regarded as indicating a purpose to change the law by judicial action based upon some supposed policy of Congress. *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, 36; *Hadden* v. *Collector*, 5 Wall. 107, 111; *Scott* v. *Reid*, 10 Pet. 524, 527; *St. Paul &c. Ry. Co.* v. *Phelps*, 137 U. S. 528.

The primary rule is that a statute is to receive the meaning which the ordinary reading of its language warrants. *United States* v. *Fisher*, 2 Cranch. 386; *United States* v. *Hartwell*, 6 Wall. 395; *United States* v. *Wiltberger*, 5 Wheat. 95.

The exhibition at the Royal Academy was a publication of the painting.    Published means made public.

The only way in which a painting or statue, a model or design can be published is by exhibition thereof to the public. If the public were admitted without restriction of number, the exhibition was in every sense a public exhibition.

Section 4965 cannot be enforced by an action in replevin. The writs of replevin and proceedings thereunder were unwarranted in law and illegal.    Replevin under the New York Code of Civil Procedure is not adapted, and the Circuit Court is without authority to adapt or mold it, to proceedings for enforcing the forfeiture of infringing sheets accruing under Rev. Stat., § 4965.

Plaintiff's proceedings, therefore, were without authority of law, and the Circuit Court was without jurisdiction to try the action or render a judgment. *Falk* v. *Curtis Pub. Co.*, 107 Fed. Rep. 126; *Rinehart* v. *Smith*, 121 Fed. Rep. 148; *Gustin* v. *Record Pub. Co.*, 127 Fed. Rep. 603; *Hills* v. *Hoover*, 142 Fed. Rep. 904; *Morrison* v. *Pettibone*, 87 Fed. Rep. 330; *Walker* v. *Globe Newspaper Co.*, 130 Fed. Rep. 593.

*Mr. Antonio Knauth* for defendant in error:

The copyright statute does not require a notice on the original

painting, but only on every copy of every edition issued. *Werckmeister* v. *Pierce & Bushnell Co.*, 63 Fed. Rep. 455, and *Werckmeister* v. *Amer. Lithographic Co.*, 142 Fed. Rep. 827.

For the purposes of the present case it is immaterial whether or not the original picture is included in the words "in the several copies of every edition published," because clearly the statute cannot be construed to require a notice on the unpublished painting. The object of the statute requiring notice is to give notice to the public. The statutes refer only to the published edition, which is an edition offered to the public for sale or circulation. *Falk* v. *Gast Lith. & Eng. Co.*, 54 Fed. Rep. 890, 894 (Shipman, J.); *Burrow-Giles Lith. Co.* v. *Sarony*, 111 U. S. 53; *Snow* v. *Mast*, 65 Fed. Rep. 995; Am. & Eng. Enc. of Law, Vol. 7 (2d ed.), 555; *Thompson* v. *Hubbard*, 131 U. S. 123, 150; *Mifflin* v. *White*, 190 U. S. 260.

The action was properly brought to secure condemnation and forfeiture of the goods, adapting the pleadings as far as might be to an action of replevin. *Bolles* v. *Outing Co.*, 175 U. S. 266; *Hageman* v. *Springer*, 110 Fed. Rep. 374; *Springer Lith. Co.* v. *Falk*, 59 Fed. Rep. 707; *Morrison* v. *Pettibone*, 87 Fed. Rep. 330; *Childs* v. *N. Y. Times Co.*, 110 Fed. Rep. 527.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

This case involves important questions under the copyright laws of the United States, upon which there has been diversity of view in the Federal courts.

Before taking up the errors assigned it may aid in the elucidation of the questions involved to briefly consider the nature of the property in copyright which it is the object of the statutes of the United States to secure and protect. A copyright, as the term imports, involves the right of publication and reproduction of works of art or literature. A copyright, as defined by Bouvier's Law Dictionary, Rawles' edition, volume 1, p. 436, is: "The exclusive privilege, secured according to certain legal

forms, of printing, or otherwise multiplying, publishing and vending copies of certain literary or artistic productions." And further, says the same author, "the foundation of all rights of this description is the natural dominion which every one has over his own ideas, the enjoyment of which, although they are embodied in visible forms or characters, he may, if he chooses, confine to himself or impart to others." That is, the law recognizes the artistic or literary productions of intellect or genius, not only to the extent which is involved in dominion over and ownership of the thing created, but also the intangible estate in such property which arises from the privilege of publishing and selling to others copies of the thing produced.

There was much contention in England as to whether the common law recognized this property in copyright before the Statute of Anne; the controversy resulting in the decision in the House of Lords in the case of *Donelson* v. *Beckett*, 4 Burr, 2408, the result of the decision being that a majority of the judges, while in favor of the common law right, held the same had been taken away by the statute. See *Wheaton* v. *Peters*, 8 Pet. 591, 656; *Holmes* v. *Hurst*, 174 U. S. 82.

In this country it is well settled that property in copyright is the creation of the Federal statute passed in the exercise of the power vested in Congress by the Federal Constitution in Art. I, § 8, "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." See *Wheaton* v. *Peters*, 8 Pet. 591, *supra;* *Banks* v. *Manchester*, 128 U. S. 244, 252; *Thompson* v. *Hubbard*, 131 U. S. 123, 151.

Under this grant of authority a series of statutes have been passed, having for their object the protection of the property which the author has in the right to publish his production, the purpose of the statute being to protect this right in such manner that the author may have the benefit of this property for a limited term of years. These statutes should be given a fair and reasonable construction with a view to effecting such purpose.

The first question presented in oral argument and upon the briefs involves the construction of § 4962 Rev. Stat. as amended (18 Stat. 78; 3 U. S. Comp. Stat., 1901, p. 3411), which is as follows:

"That no person shall maintain an action for the infringement of his copyright unless he shall give notice thereof by inserting in the several copies of every edition published, on the title page or the page immediately following, if it be a book; or if a map, chart, musical composition, print, cut, engraving, photograph, painting, drawing, chromo, statue, statuary, or model or design intended to be perfected and completed as a work of the fine arts, by inscribing upon some visible portion thereof, or of the substance on which the same shall be mounted, the following words, viz: 'Entered according to act of Congress, in the year ——, by A. B. in the office of the Librarian of Congress, at Washington;' or, at his option, the word 'copyright,' together with the year the copyright was entered and the name of the party by whom it was taken out, thus: 'Copyright 18—, by A. B.' "

It is the contention of the plaintiff in error that the original painting was not inscribed as required by the act, and therefore no action can be maintained, and it is insisted that the inscription upon the photogravures offered for sale is not sufficient.

It must be admitted that the language of the statute is not so clear as it might be, nor have the decisions of the courts been uniform upon the subject. In *Werckmeister* v. *Pierce & Bushnell Manf. Co.*, 63 Fed. Rep. 445, Judge Putnam held that the failure to inscribe the copyright notice upon the original painting did not effect the copyright. That judgment was reversed by the Circuit Court of Appeals for the First Circuit by a divided court. 72 Fed. Rep. 54.

In the case of *Werckmeister* v. *American Lithographic Co.*, 142 Fed. Rep. 827, Judge Holt reached the same conclusion as Judge Putnam, and in the case at bar the Circuit Court of Appeals for the Second Circuit approved of the reasoning of Judges Putnam and Holt and disagreed with the majority of

the judges of the Circuit Court of Appeals for the First Circuit.

Looking to the statute, it is apparent that if read literally the words "inscribed on some visible portion thereof," etc., apply to the antecedent terms "maps, charts, musical composition, print, cut, engraving, photograph, painting," etc., and the words of the first part of the sentence requiring notice to be inserted in the several copies of every edition published apply literally to the title page or the page immediately following, if it be a book.

But in construing a statute we are not always confined to a literal reading, and may consider its object and purpose, the things with which it is dealing, and the condition of affairs which led to its enactment so as to effectuate rather than destroy the spirit and force of the law which the legislature intended to enact.

It is true, and the plaintiff in error cites authorities to the proposition, that where the words of an act are clear and unambiguous they will control. But while seeking to gain the legislative intent primarily from the language used we must remember the objects and purposes sought to be attained.

We think it was the object of the statute to require this inscription, not upon the original painting, map, photograph, drawing, etc., but upon those published copies concerning which it is designed to convey information to the public which shall limit the use and circumscribe the rights of the purchaser.

As we have seen, the purpose of the copyright law is not so much the protection of the possession and control of the visible thing, as to secure a monopoly having a limited time, of the right to publish the production which is the result of the inventor's thought.

We have been cited to no case, nor can we find any direct authority in this court upon the question. But the opinion of Mr. Justice Miller in *Lithographic Company* v. *Sarony*, 111 U. S. 53, is pertinent. The court there considered whether Congress had the constitutional right to protect photographs and negatives by copyright, and the second assignment of

error relates to the sufficiency of the words "Copyrighted 1892 by N. Sarony," when the copyright was the property of Napoleon Sarony. In treating this question the learned judge used this very suggestive language (p. 55):

"With regard to this latter question, it is enough to say that the object of the statute is to give notice of the copyright to the public, by placing *upon each copy*, in some visible shape, the name of the author, the existence of the claim of exclusive right, and the date at which this right was obtained."

If the contention of the plaintiff in error be sustained the statute is satisfied only when the original map, chart, etc., or painting is inscribed with the notice, and this is requisite whether the original painting is ever published or not. We think this construction ignores the purpose and object of the act, which Mr. Justice Miller has said in the language just quoted, is to give notice of the copyright to the public— that is, to the persons who buy or deal with the published thing.

It is insisted that there is reason for the distinction in the statute between books, and maps, charts, paintings, etc., in that a book can only be published in print and becomes known by reading, while paintings, drawings, etc., are published by inspection and observation.

It may be true that paintings are published in this way, but they are often sold to private individuals and go into private collections, whilst the copies, photographs or photogravures, may have a wide and extended sale.

It would seem clear that the real object of the statute is not to give notice to the artist or proprietor of the painting or the person to whose collection it may go, who needs no information, but to notify the public who purchase the circulated copies of the existing copyright in order that their ownership may be restricted.

There does not seem to be any purpose in requiring that an original map, chart or painting shall be thus inscribed, while there is every reason for requiring the copies of editions pub-

lished to bear upon their face the notice of the limited property which a purchaser may acquire therein.

This construction of the statute which requires the inscription upon the published copies is much strengthened by the review of the history of copyright legislation which is contained in Judge Putnam's opinion in *Werckmeister* v. *Pierce & Bushnell Co.*, 63 Fed. Rep. 445; that legislation before the statute of 1874, in which paintings were for the first time introduced, shows the uniform requirement of notice upon copies. The apparent incongruities in the statute, in the light of its history, have grown up from enlarging the scope of the law from time to time by the introduction of new subjects of copyright and engrafting them on the previous statutes. The same argument which requires original paintings to be inscribed would apply to all other articles in the same class in the present law, as maps, charts, etc., which were formerly classed with books, so far as requiring notice upon copies is concerned.

Such original maps and charts, etc., may and usually do remain in the possession of the original makers, and there is no necessity for any notice upon them, but the copyright is invalid, as the plaintiff in error insists, unless the original is itself inscribed with the notice of copyright.

For the learned counsel for plaintiff in error says: "If the painting or like article is ripe for copyright, it is ripe for the inscription of the notice. The statute requires the inserting of notice in published things only in respect to published editions of books. The term 'published' is not used in connection with paintings, statues and the like." And it is urged there can be no such thing as an "edition" of a painting, and copies of published editions are the only copies mentioned in the statute. But this phrase survives from former statutes, which dealt only with books, maps, charts, etc. When paintings and other things not capable of publication in "editions" were introduced into the statute, the language was not changed so as to be technically accurate in reference to the new subjects of copyright.

But the sense and purpose of the law was not changed by this lack of verbal accuracy, and we think while the construction contended for may adhere with literal accuracy and grammatical exactness to the language used, it does violence to the intent of Congress in passing the law, and that the requirement of "inscription upon some visible portion thereof" should be read in connection with the first part of the sentence, which requires notice to be inserted in the several copies of every edition published, on the title page if it be a book, upon some visible portion of the copy if it be a map, chart, painting, etc.

As we have said in the beginning, the statute is not clear. But read in the light of the purpose intended to be effected by the legislation, we think its ambiguities are best solved by the constructions here given, and that the Circuit Court of Appeals made no error in this respect.

Again, it is contended that under the facts stated Werckmeister was but the licensee of Sadler, and as such not within the terms of the statute (§ 4952 as amended 1891, 26 Stat. 1107; 3 U. S. Comp. Stat., p. 3406), which is as follows:

"The author, inventor, designer or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print or photograph or negative thereof, or of a painting, drawing, chromo, statue, statutary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators or assigns of any such person shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same; and, in the case of dramatic composition, of publicly performing or representing it or causing it to be performed or represented by others; and authors or their assigns shall have exclusive right to dramatize and translate any of their works for which copyright shall have been obtained under the laws of the United States."

But we think the transfer in this case accomplished what it

was evidently intended to do, a complete transfer of the property right of copyright existing in the picture. There is no evidence of any intention on the part of Sadler to retain any interest in this copyright after the sale to Werckmeister; and when the painting was offered for sale at the Royal Academy it was with a reservation of the copyright.

It would be giving an entirely too narrow construction to this instrument to construe it to be a mere license or personal privilege, leaving all other rights in the assignor. That it was the purpose of the parties to make a complete transfer is shown by the instrument executed when read in the light of the attendant circumstances.

In this connection it is argued that under the statute above quoted (§ 4952 as amended March 3, 1901), an author cannot, before publication, assign the right or privilege of taking a copyright independent of the transfer of the copyrightable thing itself, and it is contended that the terms author, inventor, designer, refer to the originator of the book, map, chart, painting, etc., and that the term "proprietor" refers to the person who has a copyrightable thing made for him under such circumstances as to become the proprietor, as, for instance, one who causes a digest to be compiled or a picture to be painted.

But we think this statute must be construed in view of the character of the property intended to be protected. That it was intended to give the right of copyright to others than the author, inventor or designer is conclusively shown in the use of the terms "proprietor" and "assigns" in the statute.

It seems clear that the word "assigns" in this section is not used as descriptive of the character of the estate which the "author, inventor, designer, or proprietor" may acquire under the statute, for the "assigns" of any such person, as well as the persons themselves, may, "upon complying with the provisions of this chapter," have the sole liberty of printing, publishing and vending the same. This would seem to demonstrate the intention of Congress to vest in "assigns," before copyright, the same privilege of subsequently acquiring complete

statutory copyright as the original author, inventor, designer or proprietor has. Nor do we think this result is qualified because the statute gives to assigns, together with the right of publishing, vending, etc., the right of "completing, executing and finishing" the subject-matter of copyright.

And a strong consideration in construing this statute has reference to the character of the property sought to be protected. It is not the physical thing created, but the right of printing, publishing, copying, etc., which is within the statutory protection. While not in all respects analogous, this proposition finds illustration in *Stephens* v. *Cady*, 14 How. 528, in which it was held, where the copyright for map had been taken out under the act of Congress, a sale upon execution of the copperplate engraving from which it was made did not pass the right to print and sell copies of the map. Mr. Justice Nelson, delivering the opinion of the court, said (p. 530):

"But from the consideration we have given to the case, we are satisfied that the property acquired by the sale in the engraved plate, and the copyright of the map secured to the author under the act of Congress, are altogether different and independent of each other, and have no necessary connection. The copyright is an exclusive right to the multiplication of the copies, for the benefit of the author or his assigns, disconnected from the plate, or any other physical existence. It is an incorporeal right to print and publish the map, or, as said by Lord Mansfield in *Millar* v. *Taylor*, 4 Burr, 2396, 'a property in notion, and has no corporeal tangible substance.'"

And the same doctrine was thus stated by Mr. Justice Curtis in *Stevens* v. *Gladding*, 17 How. 447, 452:

"And upon this question of the annexation of the copyright to the plate it is to be observed, first, that there is no necessary connection between them. They are distinct subjects of property, each capable of existing, and being owned and transferred, independent of the other."

While it is true that the property in copyright in this country is the creation of statute, the nature and character of the

property grows out of the recognition of the separate ownership of the right of copying from that which inheres in the mere physical control of the thing itself, and the statute must be read in the light of the intention of Congress to protect this intangible right as a reward of the inventive genius that has produced the work. We think every consideration of the nature of the property and the things to be accomplished supports the conclusion that this statute means to give to the assigns of the original owner of the right to copyright an article the right to take out the copyright secured by the statute, independently of the ownership of the article itself.

It is further contended that the exhibition in the Royal Gallery was such a publication of the painting as prevents the defendant in error from having the benefit of the copyright act. This question has been dealt with in a number of cases, and the result of the authorities establishes, we think, that it is only in cases where what is known as a general publication is shown, as distinguished from a limited publication under conditions which exclude the presumption that it was intended to be dedicated to the public, that the owner of the right of copyright is deprived of the benefit of the statutory provision.

Considering this feature of the case, it is well to remember that the property of the author or painter in his intellectual creation is absolute until he voluntarily parts with the same. One or many persons may be permitted to an examination under circumstances which show no intention to part with the property right, and it will remain unimpaired.

The subject was considered and the cases reviewed in the analogous case of *Werckmeister* v. *The American Lithographic Company*, 134 Fed. Rep. 321, in a full and comprehensive opinion by the late Circuit Judge Townsend, which leaves little to be added to the discussion.

The rule is thus stated in Slater on the Law of Copyright and Trademark (p. 92):

"It is a fundamental rule that to constitute publication there must be such a dissemination of the work of art itself

among the public, as to justify the belief that it took place with the intention of rendering such work common property."

And that author instances as one of the occasions that does not amount to a general publication the exhibition of a work of art at a public exhibition where there are by-laws against copies, or where it is tacitly understood that no copying shall take place, and the public are admitted to view the painting on the implied understanding that no improper advantage will be taken of the privilege.

We think this doctrine is sound and the result of the best considered cases. In this case it appears that paintings are expressly entered at the gallery with copyrights reserved. There is no permission to copy; on the other hand, officers are present who rigidly enforce the requirements of the society that no copying shall take place.

Starting with the presumption that it is the author's right to withhold his property, or only to yield to a qualified and special inspection which shall not permit the public to acquire rights in it, we think the circumstances of this exhibition conclusively show that it was the purpose of the owner, entirely consistent with the acts done, not to permit such an inspection of his picture as would throw its use open to the public. We do not mean to say that the public exhibition of a painting or statue, where all might see and freely copy it, might not amount to publication within the statute, regardless of the artist's purpose or notice of reservation of rights which he takes no measure to protect. But such is not the present case, where the greatest care was taken to prevent copying.

It is next objected that the form of action in this case was the ordinary action for replevin under the New York Code, and as the plaintiff did not have the right of property or possession before the beginning of this action, no such action would lie. Whether this action was the one in the nature of replevin for the seizures of the plates and copies indicated in the case of *Bolles* v. *Outing Company,* 175 U. S. 262, 266, we do not find it necessary to determine. After verdict, and upon motion for

a new trial, plaintiff in error, defendant below, moved to set aside the verdict "On the ground that replevin under the statutes of the State of New York is not an appropriate remedy or a lawful and legal remedy for taking possession of the alleged incriminating sheets or pictures, and that the proceedings taken in that behalf by the plaintiff were illegal and invalid, and that the plaintiff cannot avail of any benefit of that proceeding, and the introduction in evidence of the replevin proceedings was an error." The motion was denied and exception duly taken.

The learned counsel for the plaintiff in error admits that this question was not formally raised until the defendant's motion for a new trial, but maintains that the same question was raised by the objection to admission in evidence of the replevin proceedings by the marshal for the Western and Southern Districts of New York respectively.

Examining this record, it is perfectly apparent that no objection was made to the form of the action until it was embodied after verdict, in the motion for a new trial. Upon the admission of the writ of replevin, addressed to the marshal of the Western District of New York, and affidavit, the objection stated was "on the ground that the process of replevin that was executed by the marshal in Buffalo was an invasion of defendant's constitutional right, was an unwarrantable search, an illegal act, and nothing done under it, or information obtained by virtue of it, can be used in evidence against defendant under the Fourth and Fifth Amendments of the United States Constitution."

The same objection was made when the writs of replevin, affidavit and return were offered in evidence concerning the Southern District of New York, and it was said: "Defendant's counsel objects on the same grounds as stated in the introduction of the stipulation, namely, that the papers constitute an illegal proceeding, an invasion of the defendant's constitutional right, as provided by the Fourth and Fifth Amendments, and plaintiff cannot avail of them as evidence in this case, on account of their illegality."

The argument which followed, could it be assumed to broaden the objection, was far from complaining of the form of action as such, but rested upon the Constitution and the character of the seizure of the goods of which it was maintained the plaintiff was not entitled to possession until after a judgment of forfeiture.

The record shows that the objection to the form of the remedy was first taken in any adequate way upon the motion for a new trial when it was too late.

In conclusion, it was suggested rather than argued that the constitutional rights of the plaintiff in error were violated by the seizure of the goods, and reference was made to the Fourth and Fifth Amendments. We think we need only refer in this connection to *Adams* v. *New York*, 192 U. S. 585, 597, and *Hale* v. *Henkel*, 201 U. S. 43.

Finding no error in the judgment of the Circuit Court of Appeals, the same is

*Affirmed.*