# DISTRICT OF COLUMBIA *v.* DEWALT.

STATUTE; PHYSICIANS.

1. In construing a statute, courts are not always confined to a literal reading of it, but may consider its objects and purposes, the acts with which it is dealing, and the condition of affairs which led to its enactment.

2. While penal statutes are to be strictly construed, they will be interpreted according to the manifest import of the language employed and the evils sought to be overcome; and they will not be so construed as to defeat the obvious intent of the legislature.

3. Under the act of Congress of February 1, 1907 (34 Stat. at L. 870, chap. 442), to regulate the practice of veterinary medicine in this District, and requiring anyone desiring to so practise to apply for a

license, and providing that a record shall be kept by the board of examiners thereby created, showing whether a license has been issued as a result of any application to practise, and that no one shall practise, or hold himself out as practising, veterinary medicine without conspicuously displaying such a license in his office,—any person who engages in such practice without a license is guilty of a violation of the act, although the act itself does not in express terms prohibit such practice.

No. 1863. Submitted April 7, 1908. Decided May 5, 1908.

In Error to the Police Court of the District of Columbia.
*Judgment Reversed.*

The facts are stated in the opinion.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Francis H. Stephens,* Assistant, for the plaintiff in error.

*Mr. John E. McNally* and *Mr. Edwin Forrest* for the defendant in error.

Mr. Justice Robb delivered the opinion of the Court:

This writ of error brings into review a decision of a judge of the police court of the District dismissing a complaint against the defendant in error, William Dewalt, charging him with engaging in the practice of veterinary medicine in violation of the act of February 1, 1907 (34 Stat. at L. 870, chap. 442), entitled "An Act to Regulate the Practice of Vetrinary Medicine in the District of Columbia," on the ground that said act does not in terms prohibit such practice.

The purpose of Congress, as evidenced by the title to this act, was to *regulate*—that is, *control*—the practice of veterinary medicine in this District. Manifestly that purpose was not accomplished if the view of the trial court is correct.* An analysis of the whole statute will determine that question, since, "in construing a statute, we are not always confined to a literal reading," but "may consider its object and purpose, the things with

which it is dealing, and the condition of affairs which led to its enactment so as to effectuate, rather than destroy, the spirit and force of the law which the legislature intended to enact." *American Tobacco Co.* v. *Werckmeister,* 207 U. S. 284, 52 L. ed. 208, 28 Sup. Ct. Rep. 72.

Section 1 of the act provides for the appointment of a board of examiners in veterinary medicine, and prescribes their qualifications and tenure.

Section 2 provides for the organization of the board, that it shall keep an official record of its meetings "and also an official register of *all applicants for licenses,* which register shall show the name, age, place, and duration of residence of each applicant, the time spent in the study of veterinary medicine, in and out of medical schools, and the names and locations of all medical schools which have granted said applicant any degree or certificate of attendance upon lectures; and it shall also show whether said applicant was *rejected* or *licensed* under this act; and said register shall be prima facie evidence of all matters contained therein."

Section 3 specifically ordains that, from and after the passage

---

NOTE.—The bill of exceptions contained the following recitals, showing the grounds upon which the lower court directed a verdict for the defendant:

"And thereupon the defendant, by his counsel, John E. McNally, Esq., moved the court to rule, as matter of law, that the act of Congress approved February 1, 1907, entitled 'An Act to Regulate the Practice of Veterinary Medicine in the District of Columbia,' under which said information is brought, provides no penalty for engaging in the practice of veterinary medicine, or any branch thereof, in the District of Columbia without first having obtained a license so to do, and prayed the court to instruct th ejury to return a verdict of not guilty.

"The court thereupon granted said motion and instructed the jury accordingly, for the reason that the statute does not command, nor prohibit, a person from practising veterinary medicine without a license; that there are no words in the statute creating such offense except by implication or inference; that the command or prohibition in a statute creating a crime must be direct and positive, and is not to be determined by inference, and that the penalty clause, therefore, does not apply to a person practising veterinary medicine without a license."—REPORTER.

of the act *"all* persons desiring to practise vetrinary medicine, or any branch thereof, in the District of Columbia, or who shall desire to hold themselves out to the public" as so practising, *"shall make application to said board of examiners in veterinary medicine for a license so to do."* The section then prescribes the qualifications of applicants for licenses and the fees to be collected therefor. The section further provides that the board shall issue licenses "to all who are found by such examinations to be, in the judgment of said board, competent to so practice."

Section 4 provides that reciprocal arrangements in respect to licenses may be made by the board with analogous boards of the several States and Territories; but it is provided that "no arrangement shall be made under the provisions of this section which will be liable to lower the standard of practice of veterinary medicine in the District."

Section 5 directs that a license shall be issued to any person who has received a diploma from a lawfully authorized veterinary college, and who has, on or before the passage of the act, maintained an office for the practice of veterinary medicine in the District. The section further directs that any person not a graduate of a veterinary college, who, for five years previous to the passage of the act, has been continuously engaged in the practice of medicine in the District and maintained in the District an office for the purpose, shall be permitted to be examined without fee, "and, upon proof of satisfactory knowledge of veterinary medicine, shall be registered and licensed as a practitioner of veterinary medicine."

Section 6 provides that an appeal may be taken by an applicant for a license from the decision of the board of examiners to the commissioners of the District, whose duty it then becomes to appoint a board of review who may re-examine the applicant.

Section 7 requires every person practising veterinary medicine in the District, or representing himself, or permitting himself to be represented, as so practising, to "display, or cause to be displayed, conspicuously in his usual place of business, *his license to practise in said District."* The section further re-

quires such place of business to be open during all reasonable hours for inspection by any representative of the police department or of the board of examiners, "so far as may be necessary to examine such licenses."

Section 8 defines the practice of veterinary medicine, and provides "that any person may, without compensation, apply any medicine or remedy, and perform any operation, for the treatment, relief, or cure of any sick, diseased, or injured animal."

Section 9 exempts from the operation of the act veterinary surgeons in the Army, or in the employ of the Agricultural Department, who are graduates of regular veterinary colleges and also regularly licensed veterinarians in actual consultation from other States, or called from other States to attend cases in the District.

Section 10 permits the board, after notice and hearing, to revoke or suspend for a time certain the license of any person to practise veterinary medicine in the District for several stated causes. An appeal is provided to the commissioners.

Section 11 ordains "that any person who shall violate, or aid or abet in violating, any of the provisions of this act, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not more than $200, or by imprisonment in the workhouse of the District of Columbia for not more than six months, or by both such fine and imprisonment."

By sec. 12 it is made duty of the corporation counsel, or one of his assistants, to prosecute violations of the act.

The foregoing analysis of this comprehensive act clearly shows it to have been the purpose of Congress to raise the standard of practice of veterinary medicine in this District by prescribing qualifications for all practitioners and requiring such practitioners to be licensed. The 2d section of the act makes the record of the board prima facie evidence as to whether or not an applicant has received a license. Section 3 requires *all* persons who wish to practise veterinary medicine or any branch of it in the District, or who desire to hold themselves out as so

practising, to make application for a license; and sec. 7 commands the conspicuous display of a license by all such persons. It was conceded in the argument at bar that, if the defendant had been prosecuted for not applying for a license, the complaint would not have been subject to attack. This concession illustrates the almost ridiculous result of a literal reading of the statute. Under such an interpretation a person, by applying for a license, even though not possessing the qualifications required by the act, and even though not receiving a license, escapes all liability to prosecution. It was the substance, and not the shadow, with which Congress was dealing. The object of the act was not to provide idle forms and ceremonies, but to rid the District of quack horse doctors. Whilst it is true that penal statutes are to be strictly construed, it is equally as true that they are to be interpreted according to the manifest import of the language employed and the evils sought to be overcome. *Northern Securities Co.* v. *United States,* 193 U. S. 358, 48 L. ed. 709, 24 Sup. Ct. Rep. 436. Courts should not, and do not, construe penal statutes so strictly as to defeat the obvious intention of the legislature. *United States* v. *Lacher,* 134 U. S. 624, 33 L. ed. 1080, 10 Sup. Ct. Rep. 625.

In the case at bar there is no room for misunderstanding as to the evil which the act seeks to remedy, and the natural and logical import of the language employed leaves no room for doubt as to the manner in which the remedy is to be applied. The act commands anyone desiring to practise veterinary medicine to apply for a license; that a record be kept showing whether or not a license is issued as the result of such application; and that no one shall practise, or hold himself out as practising, veterinary medicine in the District without conspicuously displaying such a license. Anyone violating *any* of these provisions is liable to prosecution. To hold that such clear, consistent, and closely connected provisions permit the practice of veterinary medicine in this District without a license would be an affront to the lawmaking power and evidence of an unwillingness on our part to give force and effect to its clearly expressed will.                    *Reversed.*