540 P.2d 176

Al GUSTAVE, dba Al Gustave Creative
Designs, Appellant,

v.

Frank ZUPPIGER and Louise Zuppiger, hus-
band and wife, dba Zuppiger Cabinet
Company, Appellees.

No. 1 CA–CIV 2284.

Court of Appeals of Arizona,
Division 1,
Department C.

Sept. 23, 1975.

**558**

Carson, Messinger, Elliott, Laughlin & Ragan, by Robert W. Holland, Phoenix, for appellant.

Tupper, Rapp, Schlosser & O'Connor, by Edward C. Rapp, Phoenix, for appellees.

## OPINION

WREN, Judge.

This appeal raises the question as to whether appellant possessed a common-law copyright in certain original furnishings designed by him. We have determined that he did not and affirm the decision of the Superior Court in favor of the appellees.

The appellant, Al Gustave, was a creative designer who specialized in designing unique custom interiors for commercial premises. Appellees, Frank Zuppiger and Louise Zuppiger, husband and wife, were in the business of manufacturing furniture. Frank Zuppiger was a licensed cabinetmaker and had been employed from time to time by Gustave to build furniture designed by Gustave.

In 1969, Gustave was commissioned by the Thunderbird Bank to do an overall design for the interior of its new Sun City branch. As part of the decor, Gustave designed an original two-level check stand, modular teller lines, desks and a coffee table. The cabinetwork involved in the design was not done by Zuppiger. However, several months after the Sun City branch opened, the Bank purchased several additional desks of Gustave's original design and Zuppiger was hired by Gustave to do the cabinetwork.

In 1970, the Bank decided to open another branch at 19th Avenue and Dunlap. Rather than contracting with Gustave, Zuppiger was employed directly by the Bank to make various furnishings for the new branch. Zuppiger was taken to the Bank's Sun City branch where he measured and copied exactly or substantially some of the desks and the coffee table originally designed by Gustave. In 1972, Zuppiger was again employed by the Bank to build furniture for two additional branches.

Gustave claims royalties from Zuppiger on some $29,000 of work performed for the Bank which copied Gustave's original designs. The claim is based on an alleged common-law copyright in the furniture.

A common-law copyright can exist in any literary or artistic expression, three-dimensional or otherwise, provided that three requirements are met:

"1. the expression of the work must be developed beyond the point of merely an abstract idea;

"2. the work must be original with its author; and

"3. the work must be unpublished."

*Nimmer on Copyright*, § 11.2, p. 42.2.

Initially we must determine whether the furnishings constituted a proper subject for common-law copyright, i. e., whether the furnishings which were original designs by Gustave constituted an "artistic expression." Only objects which can be so classified as works of art are protected. Zuppiger contends that the furniture designed by Gustave was not within the historical or ordinary conception of the term "art." His contention is based on the utilitarian vs. artistic nature of furniture.

Zuppiger points out that under regulations adopted pursuant to statutory copy-

right, a distinction is drawn between a solely utilitarian object and a predominantly aesthetic one. 37 C.F.R. § 202.10. Further, that federal regulations prohibit copyright "[i]f the sole intrinsic function of an article is its utility." 37 C.F.R. § 202.-10(c). In spite of this limitation, however, we note that copyrights have been allowed on such articles as salt and pepper shakers, fishbowls, casseroles and ash trays. *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L. Ed. 630 (1954). (Douglas, J., concurring.)

■ But this regulation is not determinative of the subject matter of common-law copyright. While statutory copyright affords the holder a monopoly on copying the object and hence, the economic benefits of any reproductions, common-law copyright affords the holder only the right of first publication. *Nimmer on Copyright*, § 46 p. 183; 18 Am.Jur.2d *Copyright and Literary Property* § 1 (1965). Copy and sale to the public will destroy it. The definition of copyrightable works is, therefore, more restrictive for extensive statutory protection than for the limited common-law protection. In determining what is a "work of art" falling under common-law protection, the distinction between the utilitarian and the aesthetic need not necessarily be made as it is in the federal regulation. For example, common-law copyrights have been recognized in such things as original design dresses, *Fashion Originators Guild of America v. Federal Trade Commission*, 2 Cir., 114 F.2d 80 (1940); *Dior v. Milton*, 9 Misc.2d 425, 155 N.Y.S. 2d 443, aff'd. 2 A.D.2d 878, 156 N.Y.S.2d 996 (1956). Such objects would not be afforded statutory copyright protection because of their intrinsic "utilitarian" function. *Nimmer on Copyright*, § 27.3 p. 122.

To determine what constitutes an artistic expression this Court would have to undertake a subjective inquiry into the definition of art. "Individual perception of the beautiful is too varied a power to permit a narrow or rigid concept of art." See *Mazer v. Stein*, 347 U.S. at 214, 74 S.Ct. at 468.

■ This Court would rather take the position expressed in *Nimmer on Copyright*, § 19.1 p. 86.1.

"If a work might arguably be regarded as a work of art by any meaningful segment of the population . . . . then the work must be considered a work of art."

Surely that segment of the population involved in the business of interior design must regard original furnishings as an artistic expression. The fact that lay persons might not view the furnishings in the Sun City branch of the Thunderbird Bank as works of art is not the proper test.

■ Having determined that the furnishings designed by Gustave are, in fact, copyrightable, we must next determine whether Gustave acquired a common-law copyright in the furniture designed by him. This Court is of the opinion that any such copyright belonged exclusively to the Thunderbird Bank. Further, that it no longer exists because of the Bank's general publication of the work.

■ The facts are undisputed that Gustave designed the furnishings in conjunction with his employment to design an interior for the new Sun City branch. Further, the Superior Court in its Amended Findings of Fact found no express reservation of the copyright in Gustave nor any express transfer of same to the Bank.

"When one person engages another, whether as employee or as an independent contractor, to produce a work of an artistic nature, that in the absence of an express contractual reservation of the copyright in the artist, the presumption arises that the mutual intent of the parties is that the title to the copyright shall be in the person at whose instance and expense the work is done." *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298, 300 (Ninth Circuit 1965).

See also, *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (Second Circuit 1966); *Yarley v. Houghton Mifflin Co.*, 108 F.2d 28 (Second Cir-

cuit 1939); *Nimmer on Copyright* § 63, p. 244; 18 Am.Jur.2d *Copyright and Literary Property* § 8 (1965).

 Gustave offered no proof to rebut the presumption that the copyright in the original furnishings passed to the Bank which had commissioned them. Testimony reflecting that at the time the Sun City branch was built no other branches of the Thunderbird Bank were being planned, cannot be construed as an implied reservation of the copyright by Gustave. The Bank is therefore presumed to hold the copyright and Gustave cannot claim damages for infringement.

 Furthermore, the display of the furnishings in the Sun City branch of the Bank for the use of those transacting business there constituted a general publication.

> "Publication occurs when by consent of the copyright owner, the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise made available to the general public." *Nimmer on Copyright,* § 49 p. 194.

The placing of the furniture in the Bank for use of customers constituted availability to the general public. Further, Gustave was at all times aware of this intended use of the furniture by the Bank. Such publication destroyed the copyright. Id. § 46 p. 183.

Gustave contends that the display of the furniture in the Bank constituted only a limited publication which was not destructive of his rights. In *Werckmeister v. American Lithographic Co.,* 134 F. 321, 324 (Second Circuit 1904), it was noted that "[a] limited publication of a subject of copyright is one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public." Further, publication must be limited both as to persons and purpose. 18 Am.Jur.2d *Copyright and Literary Property,* § 79 (1965). *American Visuals Corp. v. Holland,* 239 F.2d 740 (Second Circuit 1956).

 The record here is devoid of any evidence reflecting that publication of the furnishings in the Bank was limited so as to preserve the copyright. Nor can it be said that the conditions of the publication were such as to preclude a presumption of dedication to the public. *American Tobacco Co. v. Werckmeister,* 207 U.S. 284, 28 S.Ct. 72, 52 L.Ed. 208 (1907). Anyone desiring to do business at the Thunderbird Bank was free to make use of the coffee table, check-stand and the other originally designed furnishings. The limitation as to persons was clearly not applicable.

The judgment is affirmed.

NELSON, P. J., and FROEB, V. C. J., concurring.