**Fritz CONNER, Plaintiff,**

v.

**MARK I, INC., an Illinois corporation, and April House, Inc., Defendants.**

**No. 79 C 4969.**

United States District Court, N. D. Illinois, E. D.

March 18, 1981.

Roger L. Harris, Harris & Goldstein, Chicago, Ill., for plaintiff.

Erwin I. Katz, Hoffman & Davis, Chicago, Ill., for defendant.

BUA, District Judge.

This cause comes before the court on the motion of defendant Mark I, Inc. for summary judgment.[1]  Rule 56(b), Fed.R.Civ.P. For the reasons hereinafter stated, this motion will be granted.

This is an action for common law copyright infringement, brought pursuant to 17 U.S.C. § 101, et seq.  Federal jurisdiction over the cause lies pursuant to 28 U.S.C.

---

1. On or about December 31, 1976 defendant April House, Inc. was dissolved and merged into a successor corporation. That corporation then, at a later point in time, became part of Mark I, Inc.

§ 1338(a),[2] and, as defendant Mark I, Inc. is an Illinois corporation having its principal place of business in Chicago, venue in the Northern District of Illinois is proper under 28 U.S.C. § 1391(b) & (c), see footnote 1, supra.

### Facts

The facts in this case are not in dispute. In 1961 the plaintiff, Fritz Conner, and his wife, both amateur photographers, took a series of photos of their St. Bernard dog playing with a chipmunk. Mr. Conner submitted several of these photographs to the Columbus Dispatch, a general circulation newspaper published in Columbus, Ohio, for possible publication, at the newspaper's discretion, in the Dispatch's nature column.[3] One of his photographs was selected, and printed in the September 24, 1961 edition of the newspaper. Neither that photograph, nor the specific edition of the Dispatch in which it ran, however, was copyrighted.

Plaintiff later licensed his "Dispatch photo" to *Life Magazine* for publication in a copyrighted edition of *Life* on October 20, 1961. Thereafter, the photograph was licensed for appearance in a number of publications throughout the world, and for use in various other media.

During 1976 and 1977, Conner came across several items, including a memo pad and poster, which contained a display of his "Dispatch photo". These items were distributed by April House, Inc., a corporation later purchased by Mark I, Inc. *See* footnote 1, *supra*. Plaintiff Conner never consented to or licensed these uses of his photograph by April House or Mark I, and until shortly before the institution of this litigation, had never had any direct contact with those entities.

### Opinion

The pivotal question in this litigation is whether plaintiff Conner maintained a common law copyright in the photograph at issue following the publication and distribution of that photograph in the September 24, 1961 edition of the Columbus Dispatch. If that publication and distribution constituted a general publication, under the law this will operate to divest the plaintiff of his common law copyright protections. N. Nimmer, *Nimmer on Copyright* § 4.13[A], at 4–65.

The Copyright Act of 1976, effective January 1, 1978, virtually preempted the area of copyright law. 17 U.S.C. § 301. Under the Act, many works created prior to January 1, 1978, which previously had been protected only by common law copyrights, became the subject of a new statutory copyright. 17 U.S.C. § 303. In order to qualify for and receive this statutory protection, though, the work in question had to be one never placed in the public domain. M. Nimmer, *Nimmer on Copyright* § 4.13; *Burke v. National Broadcasting Co.*, 598 F.2d 688, 691 (1st Cir.), *cert. denied*, 444 U.S. 869, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979). Such being the law, the issue in the case at bar thus is whether plaintiff Conner's photograph was "placed in the public domain" when it appeared in the Columbus Dispatch on September 24, 1961.

■ Plaintiff Conner argues that this appearance constituted only a limited publication, which does not operate to divest an owner of his common law copyright protection. *American Tobacco Co. v. Werckmeister*, 207 U.S. 284, 299–300, 28 S.Ct. 72, 77, 52 L.Ed. 208 (1907); *MacMillan Co. v. I.V.O.W. Corp.*, 495 F.Supp. 1134, 1144–45 (D.Vt. 1980). A limited publication has been defined as a publication "which communicates the contents of a [work] to a definite-

---

**2.** The complaint lists 17 U.S.C. §§ 501 & 504 as the bases for federal jurisdiction in this cause. 17 U.S.C. § 501, however, is merely an authorization provision which permits a plaintiff to bring suit under the Copyright Act, subject to the express requirements of that statute, *Burns v. Rockwood Distributing Co.*, 481 F.Supp. 841,

845 n.1 (N.D.Ill.1979), and § 504 provides only for recovery of actual and/or statutory damages.

**3.** The negatives of the photographs he submitted, however, always remained in the possession of Mr. Conner.

ly selected group and for a limited purpose . . . without the right of diffusion, reproduction, distribution or sale . . . *[T]he circulation must be restricted both as to persons and purpose* or it cannot be called a private or limited publication." *Burke v. National Broadcasting Co., supra* at 692, *quoting White v. Kimmell,* 193 F.2d 744, 746–77 (9th Cir. 1952) (court's emphasis).

A general publication, on the other hand, is defined as the "distribution of copies . . . of a work to the public by sale or other transfer of ownership . . . . The offering to distribute copies to a group of persons for further distribution . . . constitutes publication." 17 U.S.C. § 101. When a general publication has been found, the creator is looked upon as having made his work available in such a manner as to suggest that any interested person could, if he so wished, have a copy. *Burke v. National Broadcasting Co., supra* at 692. *See* M. Nimmer, *Nimmer on Copyright* § 4.04, at 4–20–21.

■ The appearance of the subject photograph, without statutory copyright, in the Columbus Dispatch must, in the court's opinion, be considered a general, rather than limited, publication. As was noted previously, for a publication to be considered limited, it must be restricted both as to persons and in purpose. In the instant matter, neither of these requirements has been met. Clearly, there was no limitation placed upon the Columbus Dispatch's distribution of the subject photograph, which had been submitted to the newspaper for the purpose of publication and general circulation. Anyone who desired a copy of the photograph could have obtained it simply by purchasing the particular edition of the newspaper in which it ran. That being true, as the "Dispatch photo" was freely available, this publication can only be viewed as general. *See Public Affairs Associates, Inc. v. Rickover,* 284 F.2d 262, 269–70 (D.C.Cir.1960), *vacated for insufficient record,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); *Rexnord, Inc. v. Modern Handling Systems, Inc.,* 379 F.Supp. 1190, 1197 (D.Del.1974).

There was, in addition, no limitation placed upon the purpose for which the Columbus Dispatch photograph could be used. Such limitations, where present, generally preclude recipients of the subject material from reproducing, distributing or selling their copies. M. Nimmer, *Nimmer on Copyright* § 4.13[A]. Lacking this type of limitation as well, the Columbus Dispatch publication at bar must, as a matter of law, be deemed general.

■ That plaintiff Conner may have intended to place the requisite limitations on the September 24, 1961 publication is irrelevant. This is so because it is only the *actions* of the copyright owner which will establish the existence of such constraints. *Burke v. National Broadcasting Co., supra* at 692; *Public Affairs Associates, Inc. v. Rickover, supra* at 270; *King v. Mister Maestro, Inc.,* 224 F.Supp. 101, 103 (S.D.N.Y. 1963). In *King v. Mister Maestro, Inc., supra,* advance copies of a speech Dr. Martin Luther King was to give were provided to members of the press, in the press tent, as part of a press kit. Although finding this to have been a limited publication, the *King* court specifically held that it was legally irrelevant whether Dr. King had actually intended that these copies of his speech be used solely to assist the press in its coverage of the same. The court instead found this to have been Dr. King's purpose solely from his actions in distributing the speech. *Id.* at 103. *See Burke v. National Broadcasting Co., supra* at 692.

In contrast to *King,* the actions of the plaintiff in the matter at bar suggest no such limited purpose. Rather, Mr. Conner's actions appear much more to constitute a willing placement of the subject photograph in the public domain through the unrestricted publication of it in a widely circulated urban newspaper.

The lack of restriction on further dissemination of his photograph aside, however, the plaintiff relies upon the findings of limited publication in the following circumstances as support for his position: the public delivery of a play, *Ferris v. Frohman,* 223 U.S. 424, 32 S.Ct. 263, 56 L.Ed. 492 (1912); the playing of a song in public,

*Heim v. Universal Pictures Co.,* 154 F.2d 480 (2d Cir. 1946); the public delivery of lectures, *Nutt v. National Institute Inc. for Improvement of Memory,* 31 F.2d 236 (2d Cir. 1929); the radio broadcast of a script, *Uproar Co. v. National Broadcasting Co.,* 8 F.Supp. 358 (D.Mass.1934); the public delivery of a speech, *King v. Mister Maestro, Inc., supra*; and also upon *Burke v. National Broadcasting Co., supra,* a case he contends is "close in point".

An examination of *Burke,* however, reveals clearly that the publication of Mr. Conner's photograph in the Columbus Dispatch was one general, rather than limited, in nature. In *Burke,* the plaintiff, an amateur photographer, made available to Dr. Bernard Grzimek, of the University of Gissen in Frankfort, Germany, a copy of a film he [Burke] had shot while in Africa. This film was used by Dr. Grzimek in his University lectures and on his show on German public television, and was subsequently acquired and shown by NBC without the plaintiff's consent. After learning of that showing, Burke brought suit against NBC for infringement of his common law copyright rights.

In reversing a judgment in favor of NBC, the First Circuit Court of Appeals held that Burke's release of his film to Dr. Grzimek amounted to a limited publication, and that it did not constitute such a placing of the work in the public domain as to strip him [Burke] of his common law copyright. The court's holding, however, was based upon its finding that, from the facts presented, the use of the subject film by Dr. Grzimek in Germany was more akin to a performance than any form of general publication. In this regard, the First Circuit reasoned:

> Mere performance or exhibition of a work results, at common law, in no publication at all. Under this principle, a film is not 'published' if it merely is shown *but the general public is not permitted to own*—as opposed to borrow—*tangible copies of it.*

598 F.2d at 691 (citations omitted), then concluded:

> [A]s *performance* in itself is not publication ... [p]ublication did not occur

merely because the film was shown to the general public.

*Id.* at 693. (Emphasis added).

In contrast to *Burke,* and to the other cases relied upon by the plaintiff, in the matter at bar the public was able to acquire, without restriction, tangible copies of the subject work. Thus, even under the reasoning in *Burke* the appearance of the Conner photograph in the Columbus Dispatch would not constitute a simple performance, or otherwise be a limited publication.

### Conclusion

For the reasons set forth above, the motion for summary judgment of defendant. Mark I, Inc. is GRANTED.

IT IS SO ORDERED.