## FELDMAN v. AMOS AND ANDY.
### Patent Appeal No. 3203.

Court of Customs and Patent Appeals.

Feb. 12, 1934.

Erwin I. Feldman, of Baltimore, Md., for appellant.

Cromwell, Greist & Warden and Comfort S. Butler, all of Chicago, Ill., and Earle D. Crammond, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from the decision of the Commissioner of Patents, affirming the decision of the Examiner of Trade-mark Interferences, denying to appellant the right to register the trade-mark "Amos 'n' Andy" for work shirts, which mark had been used by appellant on such merchandise since January 1, 1930.

Appellees opposed the registration of said alleged trade-mark, and state in their notice of opposition that Charles J. Correll and Freeman F. Gosden are members of the firm of Amos and Andy, and that said Correll and Gosden are doing business as a firm under said firm name. The notice of opposition alleges that appellees believe they would be damaged by such registration, and for ground of opposition rely upon the following pertinent provisions of sections 5 and 6 of the Trade-Mark Act of February 20, 1905, as amended (15 USCA §§ 85, 86):

"Sec. 5. * * * That no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner, or in association with a portrait of the individual * * * shall be registered under the terms of this subdivision of this chapter. * * *

"Sec. 6. * * * Any person who believes he would be damaged by the registration of a mark may oppose the same by filing notice of opposition, stating the grounds therefor, in the Patent Office. * * * "

The notice of opposition recites that the opposers are dramatic artists, and were, on the date of the filing of the notice of opposition and prior thereto, engaged in the business of composing and phonetically recording, and producing and presenting in person and by radio broadcast, dialogues or performances for the purpose of entertainment; that said business had been carried on as a copartnership under the firm name of Amos and Andy. Other allegations were made which are not necessary to repeat here.

The applicant, in the usual form, answered the notice of opposition, and this required appellees to submit proofs.

The appellees submitted evidence in the form of stipulated statements. The appellant produced no evidence. The said stipulated statement consists of the statements of said Correll and Gosden and also the statements of their business or booking agent, Alexander S. Robb, as well as the statements of William A. McGowan, an officer of an engraving company in Chicago, and William T. Meyers, manager of the record department of the Chicago Talking Machine Company.

The stipulated testimony is too long for exact reproduction here, but shows the following pertinent facts: That Correll and Gosden were actors or dramatic artists and authors or composers of skits, dialogues, and dramatic compositions which they deliver and perform under the names of Amos and Andy; that they are doing business as a partnership under the style and name of Amos and Andy; that their principal activity during the eighteen months preceding the filing of the notice of opposition had been the composing and the broadcasting of the Amos and Andy episodes or dialogue performances; that they had also composed and phonetically recorded various dialogue performances, which records bear the firm name, Amos and Andy; that they had also, for several years, been associated as partners in the business of composing, producing, and performing skits, dialogues, and other performances for entertainment under the name of Amos and Andy; that in 1928 they adopted the name, Amos and Andy, as the name of their partnership; that their partnership agreement was an oral one, and each partner contributed one-half of the funds required for the expense of carrying on the business; that they had first conducted their business from their residence in a hotel in Chicago; that in February, 1929, they had cards and stationery printed showing their firm name, Amos and Andy; that in September, 1929, they established offices in the Palmolive building in Chicago, and purchased the necessary furniture and equipment, had their firm name, Amos and Andy, lettered on the door, and since that time have conducted their partnership business from that place under that name; that under said partnership agreement they had shared equally the profits which resulted from the business; that during the conduct of said business they had received a great amount of correspondence in the name of Amos and Andy and had answered the same under that name; that their personal representative, Alexander S. Robb, handled their bookings and appearances in theatres, and in so doing used the name, Amos and Andy, as the firm name.

Various exhibits, showing the use of the said firm name on cards, stationery, door lettering, talking machine records, and advertisements, were submitted with the notice of opposition. Said stipulated facts show ownership in opposers of United States design patent No. 82,440, granted to Louis Marx for a design patent on a toy named "Amos 'n' Andy Fresh Air Taxicab." The stipulated testimony of said Robb, McGowan, and Meyers is corroborative of many of the above facts and need not be repeated here.

Appellant states his grounds of appeal in the following language: "The Appellant's grounds of appeal can be succinctly stated as falling under the following general headings: (1) That the trade-mark of the Appellant is distinctly written and falls within the proviso of section 5 of the Trade-Mark Act of 1905, as amended. (2) That the fanciful name adopted by the Appellees is not a firm name within the meaning of section 5 of the Trade-Mark Act of 1905, as amended. (3) That the use of the mark Amos and Andy by the Appellees and others has only been on articles not of the same description as those sold by Appellant."

It is appellant's first contention that his mark "Amos 'n' Andy" is printed in a distinctive manner, and is therefore not barred from registration by the provisions of the disputed section. He argues that by reason of the elision, 'n', between the words "Amos" and "Andy," which is a substitution for the

748

word "and," it presents a different appearance and sound from the term "Amos and Andy," and is to be regarded as printing the term in a distinctive manner within the meaning of the statute.

It is further contended by appellant that "Amos 'n' Andy" or "Amos and Andy" is not the name of a firm within the meaning of the act, and that all of appellees' exhibits and statements show that "Amos and Andy" or "Amos 'n' Andy" are not the names of a firm, but constitute merely an advertisement of dramatic performances, and that the design patent in evidence shows conclusively that the term "Amos 'n' Andy" is not used as the name of a firm, but that it there, as elsewhere, assumes the nature of a trademark. It is pointed out, however, that the term is not a trade-mark term for the purposes of this case, since it is conceded that the opposers have never used the term in connection with the sale of any merchandise.

Appellant then proceeds to discuss the fact that the business in which the term "Amos and Andy" has been used is not the same or a similar business as that in which appellant is engaged, and that the articles in connection with which the term is used are not of the same description.

The Commissioner of Patents, in affirming the decision of the Examiner of Trade-Mark Interferences, held that the stipulated facts fully establish that the opposers are a firm doing business, of the character recited in the stipulation, under the partnership name of Amos and Andy; that the applicant's contention that his notation is not identical with the firm name is without merit, and points out that some of the opposers' exhibits show the use of the elision, 'n', instead of the word "and"; that it was immaterial whether the opposers had engaged in selling merchandise, since the opposition is based on the quoted portion of section 5, which takes from the realm of possible trade-mark registration the name of an individual, firm, corporation, or association except under conditions not existing in the record. The commissioner held that the name of an individual or a firm was his or its own property and that such individual or firm had the right to the use or enjoyment of the same like any other species of property, and cites decisions which are hereinafter discussed.

We agree with the decision of the Commissioner of Patents that this record shows that appellant seeks to register the name of the opposers' firm under which it had been doing business and was doing business before appellant's use of the term as a trademark on merchandise, and that section 5 specifically prohibits the registration of such name under such circumstances.

The following definition of "firm" is found in Bouv. Law Dict., vol. 2, page 1232: "The name or title under which the members of a partnership transact business."

In The Asbestone Co. v. Philip Carey Mfg. Co., 41 App. D. C. 507, the appellee sought to register the term "Asbestone" as a trademark for hard asbestos boards. The Commissioner of Patents had held, by reason of appellant's failure to establish damage, that the mark was registrable. In reversing the decision of the Commissioner, the Court of Appeals of the District of Columbia held that the appellee was attempting to register the name of a corporation in existence at the time it adopted and began use of the mark, and, relying upon Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 S. Ct. 625, 35 L. Ed. 247, and other cited authorities, held that the same rule applied to a corporation as applied to an individual, and quoted from the above-cited case as follows: "A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property."

From the case of Investor Pub. Co. v. Dobinson (C. C.) 72 F. 603, 606, the court quoted as follows: "That the name of a corporation is an essential part of its being, and that the courts, independent of statutory provision, will protect the corporation in the use of its name, seems to be well settled by the authorities, and the controlling principles in such a case are those applicable to trademarks."

The court held, in the Asbestone Co. Case, supra, that no proof of actual damage would be required, and that it was not necessary that the corporation show that it was engaged actively in the business for which it was alleged it was incorporated, and that damage would be inferred from the invasion of a property right.

If the citation of any authority supporting the Commissioner's decision in the case at bar were necessary, we think the decision in the Asbestone Co. Case, supra, would fully meet the requirement. There are, however, other cases to the same effect. In American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317, it was held that whether a name of a corporation be regarded as a trade-mark, trade-name, or both, the law affords protection against its appro-

priation on the same fundamental principles. The question there was whether the above-quoted section 5 of the Trade-Mark Act prevented registration of the name "Simplex" which was a salient feature of the name Simplex Electric Heating Company. The court there laid down the rule that, if the whole name of a corporation was appropriated as a trade-mark, the statute completely barred its registration, but that, if only a portion of its name was taken, it then became a question as to whether or not it would confuse or deceive the public to the injury of the defendant or of any other corporation. After holding that the law of trade-marks was but a part of the broader law of unfair competition, the court said: "The general doctrine is that equity, not only will enjoin the appropriation and use of a trade-mark or trade-name, where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs."

The opposing firm in the instant case is not a corporation, but is a firm within the meaning of said section 5.

In Tinker v. M. F. Patterson Dental Supply Co., 53 App. D. C. 37, 287 F. 1014, the Court of Appeals of the District of Columbia held that the word "Tinker" as a trade-mark for gold and platinum alloy metal was not registrable because it was the name of an individual, Dr. Tinker, who was the original producer of what is known as "Tinker Gold."

In Duro Pump & Mfg. Co. v. California Cedar Products Co., 56 App. D. C. 156, 11 F.(2d) 205, the Court of Appeals of the District of Columbia held that the term "Duro," part of the name of the Duro Pump & Manufacturing Company, could not be registered as a trade-mark by another for use on wall board, although the business of the Duro Pump & Manufacturing Company was in connection with pneumatic pressure system .

In In re Nisley Shoe Co., 58 F.(2d) 426, 19 C. C. P. A. 1211, this court affirmed the action of the Commissioner of Patents in refusing registration of the name "Nisley's" for shoes and hosiery on the ground that it was the surname of an individual, and therefore barred for registration under section 5 of the Trade-Mark Act, supra. See, also, Jenny Wren Co. v. Lange Canning Co., 156 Ms. Dec. 246, 20 T. M. Rep. 483.

For the reasons hereinbefore stated, and upon the authorities cited, the decision of the Commissioner of Patents is affirmed.

Affirmed.