**Stephen M. SILVERMAN, Plaintiff,**

v.

**CBS INC., Defendant.**

**No. 84 Civ. 1894 (GLG).**

United States District Court,
S.D. New York.

April 14, 1986.

Wofsey, Certilman, Haft, Lebow & Balin, New York City (Barry I. Fredericks and Jonathan D. Davis, of counsel), and Arrow, Edelstein, Gross & Asher, New York City, for plaintiff.

Moses & Singer, New York City (David Rabinowitz, Stanley Rothenberg and Erica Weissman, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

The plaintiff in this action, Stephen M. Silverman, seeks a declaration regarding his right to use parts of the "Amos 'n' Andy" radio programs broadcast from March 1928, through March 1948, in a Broadway musical comedy he has written. The defendant, CBS Inc., claims to hold valid copyrights as well as trademark rights in the Amos 'n' Andy radio and television programs, and asserts counterclaims against Silverman for, *inter alia,* copyright infringement, trademark infringement, and unfair competition. Before the Court is CBS's motion for summary judgment seeking (1) dismissal of the complaint and (2) determination of liability on its counterclaims.

## I. BACKGROUND

Beginning in 1928, Freeman F. Gosden ("Gosden") and Charles J. Correll ("Correll") created and broadcast a radio program known as "The Amos 'n' Andy Show." On August 19, 1948, Gosden and Correll assigned all of their rights in the Amos 'n' Andy scripts and radio programs, along with any goodwill attached to their creations, to CBS. Under the same agreement, Gosden and Correll continued to create new scripts for CBS. CBS broadcast "The Amos 'n' Andy Show" on radio until 1955. Beginning in 1951, CBS also broadcast an "Amos 'n' Andy" television series. The television series aired on network affiliate stations until 1953, and continued in nonnetwork syndication until 1966.

In 1981, the plaintiff began writing a script for a Broadway musical comedy based on the characters of Amos and Andy. In an effort to avoid potential litigation, the plaintiff asked CBS for a license to use the Amos 'n' Andy characters in his script. CBS refused the plaintiff's request. The plaintiff nevertheless completed his script

and sought financial backing for a Broadway production.

In early 1984, the plaintiff filed this action seeking a declaration that the "Amos 'n' Andy" radio programs broadcast from March 1928, through March 1948, are in the public domain and that, therefore, he is free to make use of any parts of these programs. The plaintiff seeks a further declaration that CBS has no rights in these programs "under statutory or common law copyright or trademark, common law unfair competition, state anti-dilution law, common law or statutory rights of privacy or publicity, or any other jurisprudential theory." Complaint ¶ 1.b at 8. The plaintiff contends that CBS has abandoned any trademark rights it may have had, because it has not used any Amos 'n' Andy trademarks for twenty years and has failed to police the use of these marks by others.

In April 1984, the defendant moved to dismiss the complaint for lack of a justiciable controversy. In an oral decision on June 8, 1984, we denied the defendant's motion noting that (1) the plaintiff had already made substantial preparations to produce his play, (2) threats of suits against other users of the Amos and Andy characters created a substantial likelihood that CBS would similarly assert its rights against Silverman, and (3) the likelihood of a suit by CBS was making it difficult for the plaintiff to obtain the financial backing necessary for his production.

In early 1985, CBS amended its answer and asserted five counterclaims: (1) copyright infringement, (2) trademark infringement under section 43(a) of the Federal Trademark Act of 1946, 15 U.S.C. § 1125(a) (1982), (3) common law trademark infringement and unfair competition, (4) misappropriation of CBS's goodwill associated with the "Amos 'n' Andy" trademarks, and (5)

improper registration of one of the plaintiff's scripts as an original work. The defendant now seeks summary judgment on these counterclaims and dismissal of the plaintiff's complaint. The plaintiff argues that numerous issues of fact mandate denial of summary judgment. He also seeks sanctions under Rule 11, claiming that the defendant's motion is harassing and brought in bad faith.

The instant summary judgment motion addresses the plaintiff's first script, entitled "Amos 'n' Andy Go To The Movies."[1] In opposing this motion, the plaintiff has submitted a revised script, entitled "Fresh Air Taxi." He has purportedly deleted all dialogue and descriptions identified by CBS in its moving papers as infringing. CBS has not specifically addressed whether "Fresh Air Taxi" infringes its copyrights. However, it contends that (1) the plaintiff's creation and distribution of "Amos 'n' Andy Go To The Movies" has already infringed its copyrights, and (2) any play based on the Amos 'n' Andy characters will infringe its copyrights and trademarks, and constitute unfair competition and dilution of its marks. Consequently, we must consider whether CBS has valid copyrights and/or trademark rights in the Amos 'n' Andy shows and, if so, whether the plaintiff has infringed those rights. For the reasons stated below, the defendant's motion for summary judgment is granted in part and denied in part.

## II. DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment shall be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to demon-

---

1. Sometime between May 1984, and June or July 1984, the plaintiff made some minor changes in his script, including changing the title to "Amos 'n' Andy In Hollywood." Silverman Deposition at 11–13, 35–36, 42. According to CBS, these changes do not affect its claim of copyright infringement as presented in this motion. Defendant's Memorandum in Support of

Motion for Summary Judgment at 9 n. 2. The plaintiff has recently made more substantial script changes and retitled his work "Fresh Air Taxi." (See text immediately following note.) For the sake of simplicity, all references herein to "Amos 'n' Andy Go To The Movies," or the plaintiff's early script, shall also refer and apply to "Amos 'n' Andy In Hollywood."

strate an absence of material factual dispute. *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). It is incumbent upon the court in deciding whether there is any genuine factual issue to resolve all ambiguities and draw all reasonable inferences against the moving party. *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 115 (2d Cir.1984); *EEOC v. Home Insurance Co.*, 672 F.2d 252, 257 (2d Cir.1982).

### A. Copyright

■ The copyright laws protect original works of authorship, "that is, the author's tangible expression of his ideas." *Mazer v. Stein*, 347 U.S. 201, 214, 74 S.Ct. 460, 468, 98 L.Ed. 630 (1954). Copyright protection arises when a work is created and gives the author certain exclusive rights for a limited period of time. The requirements for, and duration of, copyright protection vary, depending on the law in effect when a work was created. The current Copyright Act, 17 U.S.C. §§ 101–914 (1982 & Supp. II 1984), was enacted October 19, 1976 (the "1976 Act"), and became effective January 1, 1978, long after the works at issue in this action were created. Consequently, our examination of copyrights for the Amos 'n' Andy radio and televisions shows

must focus on the Copyright Act of 1909 (the "1909 Act"). *See Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 754 (9th Cir.1978), *cert. denied sub nom. O'Neill v. Walt Disney Productions*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

Under the 1909 Act, an author could secure copyright by publishing a work with the required copyright notice. 1909 Act § 9.[2] He could then obtain registration of his copyright by depositing two copies of the work with the Copyright Office. 1909 Act §§ 10, 12.[3] If the author never reproduced his work for sale, he could secure copyright registration by depositing one copy of the work with the Copyright Office along with his claim of copyright. 1909 Act § 11.[4] This statutory copyright endured for twenty-eight years, and was renewable for an additional twenty-eight years. 1909 Act § 23.[5] Common law copyright protected a work indefinitely if it remained unpublished and unregistered. 1909 Act § 2.[6] Under the 1976 Act, all common law copyrights were converted to statutory copyrights as of January 1, 1978. They now expire at a fixed time, but no earlier than December 31, 2002. 17 U.S.C. § 303 (1982). Publication without copy-

---

2. Section 9 of the 1909 Act states, in pertinent part, "Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale. . . ."

3. Section 10 provides that an author who publishes his work with copyright notice "may obtain registration of his claim to copyright by complying with the provisions of this title, including the deposit of copies, and upon such compliance the Register of copyrights shall issue to him the certificates provided for in section 209 of this title." The requirements for "deposit of copies after publication" are set forth in section 12:

After copyright has been secured by publication of the work with the notice of copyright as provided in section 10 of this title, there shall be promptly deposited in the Copyright Office or in the mail addressed to the Register of Copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, . . .

4. Section 11 of the 1909 Act provides, in pertinent part, "Copyright may also be had of the works of an author, of which copies are not reproduced for sale, by the deposit, with claim of copyright, of one complete copy of such work if it be a lecture or similar production or a dramatic, musical, or dramatico-musical composition; . . ."

5. Section 23 of the 1909 Act provides as follows: "The copyright secured by this title shall endure for twenty-eight years from the date of first publication, . . . [and] the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years. . . ."

6. Section 2 of the 1909 Act states, "Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor."

right notice divested an author of all protection and cast the work into the public domain. *See* 1 M. Nimmer, *Nimmer on Copyright* § 4.01[B] at 4–5 (1985) (hereafter *"Nimmer"*).

The concept of "publication" is pivotal in determining copyright validity under the 1909 Act. However, that statute never explictly defines publication. *See* 1 *Nimmer* § 4.04 at 4–17. As we attempt to unravel the gordian knot of the claims and counterclaims herein, we will further explore this "arcane and unsettled area of law." *American Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1026 (9th Cir.1981).

The plaintiff has asked for a declaration of his rights regarding the Amos 'n' Andy radio shows broadcast between 1928 and 1948. However, the defendant asserts that the plaintiff has infringed its copyrights in the radio shows *after* 1948, and the Amos 'n' Andy television programs. Since different issues arise as to the copyrights in these three groups of works, we will address each separately.

### 1. *The 1928–1948 Radio Shows*

The plaintiff claims that the Amos 'n' Andy radio programs from March 1928, through March 1948, are in the public domain and that CBS has no proprietary rights in any part of these programs. CBS concedes that the *scripts* of these programs are in the public domain because, although registered for copyright by the show's creators, Gosden and Correll, the copyright registrations were never renewed. CBS contends, however, that the *broadcasts* of these early radio shows were never "published" and remain protected by common law copyright, converted to statutory copyright under the 1976 Act.

■ Public performance of a work is not considered a publication that divests an author of copyright protection. *See* 1 *Nimmer* § 4.08[A]. "[T]he rendering of the performance before the microphone cannot be held to be an abandonment of ownership to it by the proprietors or a dedication of it to the public at large." *Uproar Co. v. National Broadcasting Co.*, 8 F.Supp. 358,

362 (D.Mass.1934), *modified*, 81 F.2d 373 (1st Cir.1935), *cert. denied*, 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393 (1936). Thus, the radio broadcasts of the Amos 'n' Andy shows were not publications and did not divest Gosden and Correll of their common law copyrights. CBS, as assignee of those rights, remains the copyright proprietor until at least December 31, 2002. 17 U.S.C. § 303 (1982). Since a copyright owner has the exclusive right to reproduce the copyrighted work, prepare derivative works, distribute copies, and perform the work publicly, 17 U.S.C. § 106 (1982), CBS may prohibit unauthorized copying, distribution, or exhibition of the broadcasts, *i.e.*, the sound recordings of the radio shows. However, it does not presently appear that the plaintiff plans to use recordings of any of these broadcasts as part of his play. Consequently, it is immaterial that CBS retains copyrights in these works.

■ With the broadcasts protected, but not at issue, and the scripts in the public domain, the question becomes, may the plaintiff, as he proposes, freely use any part of these programs "including but not limited to, their title, characters, format, structure, themes, plots, character names and physical embodiments, characterizations and character relationships." Complaint ¶ 2(a) at 2. We cannot make so sweeping a declaration. Admittedly, the plaintiff can incur no liability for copyright infringement by using parts of the public domain scripts. However, if he makes "free use" of the items enumerated above, he may incur other liability. For example, despite loss of copyright protection, the Amos 'n' Andy characters may be protected by the law of trademark or unfair competition. *See* 1 *Nimmer* § 2.12 at 2–177 & n. 25. Consequently, the plaintiff is free to use the 1928–1948 scripts *only* if he does not infringe other property rights of CBS.

### 2. *The Post-1948 Radio Shows*

CBS asserts that, regardless of the copyright status of the radio shows *prior* to 1948, its copyrights in the programs *after*

1948 are valid. These post–1948 programs, says CBS, are the true source of substantial portions of the plaintiff's early script. While not admitting infringement, the plaintiff has responded to the instant motion by submitting a newly revised script. Fredericks Affidavit, Exhibit E. He has removed the name "Amos 'n' Andy" from the title and, purportedly, deleted all dialogue alleged by CBS to infringe its copyrights. CBS has not yet addressed whether any dialogue in the new script infringes its copyrights. It nevertheless presses its copyright counterclaims, contending that the plaintiff's revisions do not relieve him of liability for preparing and distributing his earlier, infringing script. We agree that if CBS demonstrates unauthorized copying of works in which it has valid copyrights, it is entitled to statutory damages and other relief, despite the plaintiff's recent script changes.

### a. Copyright Validity

■ The broadcasts of the post–1948 radio shows, like the earlier broadcasts, were unpublished works protected by common law copyright under the 1909 Act. They remain protected by statutory copyright under the 1976 Act. The scripts of those shows were neither published nor registered for copyright when created. In January and February 1985, CBS registered these unpublished radio scripts with the Copyright Office. The plaintiff suggests that this belated registration is somehow invalid. We cannot agree. The 1976 Act provides,

> At any time during the subsistence of copyright in any published or unpublished work, the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the

deposit specified by this section together with the application and fee specified by sections 409 and 708. Subject to the provisions of section 405(a), such registration is not a condition of copyright protection.[7]

17 U.S.C. § 408(a) (1982). Copyright registration constitutes *prima facie* evidence of copyright validity. 17 U.S.C. § 410(c) (1982). *See Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985). In the absence of any evidence rebutting this presumption of validity, we conclude that CBS holds valid copyrights in the post–1948 radio scripts.

### b. Infringement

■ The elements of a claim for infringement are a showing of (1) valid copyright and (2) the unauthorized copying of the copyrighted work. *Warner Bros., Inc. v. American Broadcasting Co.*, 654 F.2d 204, 207 (2d Cir.1981) (hereafter *"Warner v. ABC* (I)"). Copying can rarely be proven directly. Rather, copying may be found upon a showing of (1) access to the copyrighted work and (2) a substantial similarity to that work. *Id.; Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977); *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir.1946).

CBS alleges, and it is uncontested, that the plaintiff has read several scripts and listened to recordings of Amos 'n' Andy radio broadcasts.[8] Silverman Deposition at 23–24, 28. Since the plaintiff clearly had access to some, though not necessarily all, of the copyrighted radio programs, we find this prong of the infringement test is satisfied.

■ The test of substantial similarity is whether an average lay observer would recognize one work as having been appro-

---

**7.** Although not a condition of copyright protection, registration is required before a copyright owner can assert a legal claim for infringement. 17 U.S.C. § 411(a) (1982).

**8.** The plaintiff, who is now thirty-four or thirty-five years old, *see* Silverman Deposition at 7, is too young to have listened to the original Amos 'n' Andy radio broadcasts. One of the record-

ings he has listened to is a three-record phonograph album entitled "Amos 'n' Andy, The Best Loved Shows: 1946–1953." *See* Silverman Deposition, Exhibit J. This album contains a recording of a radio show entitled, "The 10,000th Broadcast," November 26, 1952, from which CBS claims the plaintiff copied substantial sections of dialogue.

priated from another. *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966). Substantial similarity is often a factual issue not appropriately resolved on a motion for summary judgment. *See Warner Bros., Inc. v. American Broadcasting Co., supra*, 720 F.2d 231, 239 (2d Cir.1983) (hereafter *"Warner v. ABC* (II)"); *Arnstein v. Porter, supra*, 154 F.2d at 473–74. However, when the evidence is so overwhelming that a court would be justified in ordering a directed verdict at trial, it is proper to grant summary judgment. *See Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 141 (D.N.J.1982), *aff'd*, 775 F.2d 70 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Knickerbocker Toy Co. v. Genie Toys, Inc.*, 491 F.Supp. 526, 528 (E.D.Mo. 1980); 3 *Nimmer* § 12.10 at 12–75 & n. 23. CBS has documented specific dialogue sequences from its copyrighted radio shows that the plaintiff has reproduced verbatim in his script entitled "Amos 'n' Andy Go To The Movies." *See* Brownell Affidavit at 3–4. We find that no reasonable person

could conclude that these portions of the plaintiff's script were original rather than copied from the specified radio plays.

■■■■ Having found access, and substantial similarity, the only remaining question is whether the plaintiff's use of the copyrighted material constitutes an unauthorized misappropriation. *See Arnstein v. Porter, supra*, 154 F.2d at 468–69. We find that it does. The plaintiff has, without authorization, reproduced parts of CBS's copyrighted works, prepared a derivative work, and distributed copies of that work.[9] He has also improperly copyrighted his infringing script as original. Accordingly, we grant the defendant's motion for summary judgment on its first and fifth counterclaims for infringement of its copyrights in the post–1948 Amos 'n' Andy radio programs. The plaintiff's copyright registration, no. PAu 600–029, is declared void.[10] The plaintiff is enjoined from reproducing or distributing that script, and will be liable for damages to be determined at a later time.[11]

**9.** The plaintiff's unauthorized use of the defendant's copyrighted works cannot be characterized as a permissible "fair use" within the meaning of section 107 of the 1976 Act, which provides that

the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. 107 U.S.C. § 107 (1982). *Cf. Werlin v. Reader's Digest Association, Inc.*, 528 F.Supp. 451, 463–64 (S.D.N.Y.1981) (duplicated portions of copyrighted work were so small and insignificant as to be *de minimus*, and, therefore, non-infringing); *Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741, 743–44 (S.D.

N.Y.), *aff'd*, 623 F.2d 252 (2d Cir.1980) (although copied portion of copyrighted composition was more than *de minimus*, its incorporation in a parody constituted a non-infringing fair use of the copyrighted work).

**10.** Only one registration is mentioned in the defendant's fifth counterclaim, which states that "[o]n or about April 10, 1984 Silverman procured the registration of a claim of copyright in one of [his] scripts (registration no. PAu 600–029...." Defendant's Amended Answer and Counterclaims ¶ 33 at 13. Based on the date of registration, we presume the registered script is "Amos 'n' Andy Go To The Movies." *See supra* note 1. If the plaintiff has obtained registration for "Amos 'n' Andy In Hollywood," it too is deemed void, since the infringing dialogue in that script is virtually identical to the corresponding scenes in "Amos 'n' Andy Go To The Movies." It is not clear whether the plaintiff has obtained copyright registration for his more recent script, "Fresh Air Taxi." However, no evidence is presently before us regarding dialogue in that script that might infringe CBS's copyrights in the post–1948 radio scripts.

**11.** CBS seeks statutory damages, pursuant to 17 U.S.C. § 504, as well as punitive damages. We view the claim for punitive damages as one for increased statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2) (1982).

### 3. The Television Shows

CBS contends that the plaintiff has infringed its copyrights in the Amos 'n' Andy television shows by copying the appearance and costumes of the characters, and the stage settings used for those programs. Initially, we must decide whether CBS holds valid copyrights in the programs. If it does, we must determine if the scope of those copyrights protect the characters' appearance and costumes, and the stage settings. Then, we will consider if the plaintiff has infringed CBS's rights.

#### a. Copyright validity

CBS has presented copyright registrations and renewals for all of the television programs allegedly infringed by the plaintiff. Rabinowitz Affidavit, Exhibit A. As noted above, these registration statements constitute *prima facie* evidence of copyright. *See supra* p. 1350. The plaintiff challenges the validity of these registrations, claiming that many of the programs were "published," without copyright notice, prior to the "date of publication" stated on the registrations. Under the 1909 Act, publication without copyright notice resulted in loss of copyright protection, which could not be restored by subsequent registration. *See* 1 *Nimmer* § 4.01[B] at 4–5.

Most of the registrations list the date of publication as June 1, 1953, when the Amos 'n' Andy series was syndicated for exhibition on non-network television stations. At the time of syndication, each program contained copyright notice. CBS acknowledges that many programs were broadcast without copyright notice prior to syndication, but argues that such broadcasts did not constitute publication. CBS contends that no publication occurred until syndica-

tion, and perhaps not even then.[12] *See Paramount Pictures Corp. v. Rubinowitz,* 217 U.S.P.Q. 48 (E.D.N.Y.1981). *But see* 1 Nimmer § 4.11[B] at 4–55. As discussed earlier, radio broadcasts are considered mere performances, which do not constitute publication. *See supra* p. 1350. The plaintiff contends that television broadcasts should be viewed (no pun intended) differently. To broadcast a television show in the early 1950's, a network often had to send copies of a program to television stations across the country. The plaintiff asserts that this distribution constituted publication.

The common law recognized three ways in which original works could be exposed to the public: "exhibition or performance, limited publication, and general publication. Of these, only general publication results in loss of the common law copyright by the creator." *Burke v. National Broadcasting Co.,* 598 F.2d 688, 691 (1st Cir.), *cert. denied,* 444 U.S. 869, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979).

> Public exhibition is not necessarily a general publication merely because the public generally is shown the work. The test of general publication is whether the exhibition of the work to the public is under such conditions as to show dedication without reservation of rights or only the right to view or inspect it without more. *American Tobacco Co. v. Werckmeister,* 207 U.S. 284 [28 S.Ct. 72, 52 L.Ed. 208] [ (1907) ]. If the conditions of publication are such that the only right is to look at the copy of the work exhibited, there is no general publication....

*Patterson v. Century Productions, Inc.,* 93 F.2d 489, 492 (2d Cir.1937), *cert. denied,* 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1114

---

Any determination of "willfullness" involves the plaintiff's intent and, as such, is an issue of fact that requires an evidentiary hearing. Accordingly, we reserve the issue of damages for trial.

In addition to seeking statutory damages and a permanent injunction, CBS asks that the plaintiff be required to recall and deliver all copies of his infringing script. Since the plaintiff has revised that script, and the earlier version was not widely circulated and is of relatively little

commercial value, we believe an injunction provides sufficient relief. We see no need for impounding the infringing script.

**12.** We need not decide whether syndication constitutes "publication." CBS mooted that question by registering its copyrights in the Amos 'n' Andy shows with the date of syndication as the date of publication; the statutory period of protection runs from the publication date declared on the registrations.

(1938). A limited publication "occurs when tangible copies of the work are distributed, but to a limited class of persons and for a limited purpose." *Burke v. National Broadcasting Co., supra,* 598 F.2d at 692. "Mere limited publication has been found where the range and purpose of distribution did not suggest that the general public was free to obtain and use the work." *Id.*

▮ In contending that early television broadcasts were general publications, the plaintiff asserts that it was common practice for copies of television programs to be "bicycled," that is, forwarded from one station to another rather than returned directly to the network. Thus, he argues, since CBS did not control the circulation of these copies, the programs are now in the public domain. However, CBS has submitted copies of agreements entered into with affiliate stations for broadcasting the Amos 'n' Andy television programs. These "Affiliation Agreements" contain a clause requiring the immediate return of copies of any program distributed for a single broadcast.[13] The plaintiff next alleges that, because there were so few affiliate stations in the early 1950's, CBS must have distributed copies to non-affiliate stations for the initial broadcast. Since non-affiliate stations presumably would not have signed Affiliation Agreements, the plaintiff implies that CBS had even less control over copies sent to them. Thus, he argues, the broadcasts were general publications. Other than the plaintiff's conclusory statements, there is no evidence in the record to support these allegations. Nevertheless, even if we accept the plaintiff's conten-

tions, distributing copies of the Amos 'n' Andy television shows for synchronized national broadcast, even to non-affiliate stations, falls far short of general publication. It certainly does not manifest a purpose to surrender all rights in the works and allow the public to copy them. *See National Comics Publications v. Fawcett Publications, Inc.,* 191 F.2d 594, 598 (2d Cir.1951). Rather, the initial broadcasts merely allowed the public "to view ... [the television shows] without more." *Patterson v. Century Productions, supra,* 93 F.2d at 492. This was, at most, a "limited publication, which did not divest CBS of its copyrights in the Amos 'n' Andy television programs."

### b. *Scope of Protection*

▮ Under section 3 of the 1909 Act, copyright protection encompasses "all copyrightable component parts" of an author's work.[14] *See Walt Disney Productions v. Air Pirates, supra,* 581 F.2d at 754. Scenery, or other mechanical devices used in a dramatic presentation are generally not copyrightable. *See* 1 *Nimmer* § 2.13 at 2–178.2; H. Warner, *Radio and Television Rights* § 34 at 88 (1954). Whether characters are a copyrightable part of a copyrighted work is a much debated issue. *See* 1 *Nimmer* § 2.12; Marks, *The Legal Rights of Fictional Characters,* 25 ASCAP Copyright L.Symp. 35 (1980). Literary characters, if sufficiently delineated, have been found copyrightable. *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.1930), *cert.*

---

**13.** Paragraph 4 of CBS's standard Affiliation Agreement reads as follows:

4. All programs to be broadcast by the Station hereunder will be delivered by [CBS] to the Station in the form of TV recordings, or otherwise. The Station agrees to observe any limitations [CBS] may place on the use of TV recordings and to return to [CBS] immediately following a single broadcast thereof, at such place as [CBS] may direct, and in the same condition as received by the Station, ordinary wear and tear excepted, each print or copy of the TV recording of each program, together with the reels and containers furnished therewith. Each such TV recording

shall be used by the Station only for the purpose herein contemplated.
Clancy Deposition, Exhibit 1 at 3.

**14.** Section 3 of the 1909 Act states,

The copyright provided by this title shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title.

*denied,* 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931). Even if the Amos 'n' Andy characters are sufficiently delineated to be copyrightable, since some works containing those characters are in the public domain, the plaintiff argues that anyone may copy them in a derivative work. *See* 1 *Nimmer* § 2.12 at 2–176 to 2–177. CBS, however, alleges that the plaintiff has copied the costumes and appearance of the characters pictured in the Amos 'n' Andy television programs, and that these artistic representations are protectable component parts of the copyrighted works.

■ Cartoons, and other graphic representations of characters, have been afforded greater copyright protection than characters described only by words. *See Warner v. ABC* (II), 720 F.2d at 240; 1 *Nimmer* § 2.12 at 2–174; Note, *The Protection Afforded Literary and Cartoon Characters Through Trademark, Unfair Competition, and Copyright,* 68 Harv.L.Rev. 349, 358 (1954). Copyright protection has been found appropriate for characters visually depicted in a movie. *Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group, Inc.,* 443 F.Supp. 291, 301 (S.D.N.Y.1977). The personification of the Amos 'n' Andy characters on television is analogous to the visual depiction of movie characters. However, we must consider a novel issue: are characters that are in the public domain in a literary work protectable by copyright in an audiovisual presentation? We believe they are. The visual representation of these characters, recorded on film, is the expression of an idea that goes beyond the word portraits in the public domain scripts and is, therefore, protectable by copyright. *See* 17 U.S.C. § 102 (1982); *Sid & Marty Krofft Television Productions, Inc. v. McDonalds Corp.,* 562 F.2d 1157, 1168–69 (9th Cir.1977). Accordingly, we find that duplication of the characters as they appeared on television would infringe CBS's copyrights.

#### c. *Infringement*

There is no question about the plaintiff's access to the Amos 'n' Andy television shows, since he has acknowledged owning a videotaped documentary containing Amos 'n' Andy film clips, and viewing an entire program at the Museum of Broadcasting. Silverman Deposition at 27, 51. Exhibits submitted by the plaintiff also include several videotapes of Amos 'n' Andy programs, which, presumably, the plaintiff has also viewed. Thus, access to the copyrighted works is deemed admitted.

■ The fact that the plaintiff proposes a production in a different medium (*i.e.,* a stage play rather than a television program) does not bar a claim of infringement. *See Ideal Toy Corp. v. Kenner Products, supra,* 443 F.Supp. at 301. However, the question of substantial similarity prevents us from resolving this claim. Until the plaintiff presents his characters on stage, we cannot tell how closely they duplicate the appearance of the television characters. Accordingly, we must deny this aspect of the defendant's motion for summary judgment and dismiss as unripe the counterclaim for infringement of the Amos 'n' Andy television programs.

### B. *Trademark*

■ The federal law of trademarks, 15 U.S.C. §§ 1051–1127 (1982 & Supp. II 1984) (the "Lanham Act") defines a trademark as

> any word, name symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish his goods ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127 (1982 & Supp. II 1984). Trademarks protect the public from being deceived as to the source and quality of goods, and protect the mark's owner from infringement of his property rights. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 2:1 at 44 (2d ed. 1984) (hereafter "McCarthy"). A mark used to identify and distinguish services, (as opposed to goods) is also within the scope of the Lanham Act. "Titles, character names and other distinctive features of radio or

television programs may be registered as service marks...." 15 U.S.C. § 1127 (1982 & Supp. II 1984). A mark need not, however, be registered to be afforded protection under the Lanham Act. *See Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir.1981). In this circuit, the Lanham Act has been held to protect the physical appearances and costumes of entertainment characters, as well as their names. *DC Comics, Inc. v. Filmation Associates,* 486 F.Supp. 1273, 1277 (S.D.N.Y.1980).

A mark will be protected if it is inherently distinctive or has become distinctive through "secondary meaning." Secondary meaning is the association of a mark with its source.

> It contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, ... might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trademark.

*G. & C. Merriam Co. v. Saalfield,* 198 F. 369, 373 (6th Cir.1912).

CBS asserts trademark rights in the name "Amos 'n' Andy" as well as the names of the characters, and words and phrases repeatedly used on the Amos 'n' Andy programs.[15] The "Amos 'n' Andy" programs were popular on radio for almost thirty years, from 1928 to 1955. The television show was first aired in 1951 and ran in syndication until 1966. During those years, the radio and television shows, and

their characters, clearly acquired distinctive meaning in the entertainment industry. As early as 1934, the program's creators, Gosden and Correll, prevailed in protecting their property rights in the name "Amos 'n' Andy." *Feldman v. Amos and Andy,* 68 F.2d 746 (C.C.P.A.1934).

We find that the name "Amos 'n' Andy," as well as the characters' names and appearances, and other distinctive features of the Amos 'n' Andy radio and television shows, are protectable marks. The words and phrases for which CBS claims trademark protection are not necessarily so distinctive as to constitute marks in their own right. However, if used in an attempt to recreate the characters, the words and phrases become a factor in determining whether the character marks have been infringed.

A claim of trademark infringement under section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (1982), requires a showing of (1) validity, *i.e.,* that the public recognizes the mark or symbol as identifying the claimant's goods or services as distinguished from those of another, and (2) infringement, *i.e.,* use of that symbol by another which is likely to cause public confusion. 1 McCarthy § 15:1 at 657. Although various elements of the Amos 'n' Andy shows are protectable under the Lanham Act, a question remains as to the continued validity of CBS's trademarks.

Trademark protection arises from the adoption and use of a distinctive mark. The Lanham Act permits the first user of a distinctive mark to register for statutory protection for a period of twenty years, which may be continually renewed, provid-

---

**15.** The defendant claims that the plaintiff's script contains, *inter alia,* the following names and phrases that constitute Amos 'n' Andy trademarks:

a. Amos 'N' Andy;
b. Amos Jones;
c. Andrew H. Brown;
d. George ("Kingfish") Stevens;
e. Algonquin J. Calhoun;
f. Sapphire Stevens;
g. Madame Queen;
h. Henry Van Porter;

i. Miss Blue;
j. Lightnin';
k. Fresh Air Taxi Co.;
l. The Mystic Knights of the Sea;
m. "Hello folks. This is Amos ...";
n. "Buzz me, Miss Blue";
o. "splain dat"
p. "Holy mackral";
q. "scuse me for protruding";
r. "battle axe".

Defendant's Statement Under Local Civil Rule 3(g) at 4–5.

ed that the mark is being used or its nonuse is excusable. 15 U.S.C. §§ 1058, 1059 (1982).[16] Similarly, the cornerstone for protection of an unregistered, common law trademark is its continued use.

 A trademark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment." 15 U.S.C. § 1127 (1982 & Supp. II 1984). *See Poncy v. Johnson & Johnson,* 460 F.Supp. 795, 799 (D.N.J.1978). CBS has not used the trademarks associated with Amos 'n' Andy for twenty years. It asserts that it intends to use the marks in the future and that the prolonged nonuse has been the result of "social changes beyond its control." Memorandum of Law in Support of Motion for Summary Judgment at 27. Temporary suspension of use of a mark due to circumstances beyond the owner's control may not result in abandonment. 1 McCarthy § 17:4 at 776–77. But, self-serving statements of intent to resume at some indefinite future time will not prevail over objective evidence of abandonment. *Amer-*

*ican Photographic Pub. Co. v. Ziff-Davis Pub. Co.,* 135 F.2d 569, 573 (7th Cir.1943); 1 McCarthy § 17:3C at 773. On the other hand, since abandonment results in forfeiture of property rights, it "should be strictly proved." *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980). Although CBS has made a strong argument in support of its claim that it never intended to abandon the Amos 'n' Andy marks, this issue is a subjective one, which cannot be decided as a matter of law on the motion before us. Consequently, we deny the defendant's motion for summary judgment on its second counterclaim, and reserve for trial the issue of abandonment. Until the validity of CBS's trademarks is determined, the claim of infringement is premature.[17]

**C. Unfair Competition**

 The keystone of the law of unfair competition, as with trademark, is the likelihood of confusing the public. 1 McCarthy § 2:3 at 54. Actually, the common law of trademarks is considered part of the broader law of unfair competition. *Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 201

**16.** Sections 1058 and 1059 provide, in pertinent part,

Each certificate of registration shall remain in force for twenty years: *Provided,* That the ... registrant shall file in the Patent and Trademark Office an affidavit showing that said mark is in use in commerce or showing that its nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark.

\* \* \* \* \* \*

Each registration may be renewed for periods of twenty years from the end of the expiring period upon ... the filing of a verified application therefor, setting forth ... [the] current use of the mark, or showing that any nonuse is due to special circumstances which excuse such nonuse and it is not due to any intention to abandon the mark.

15 U.S.C. §§ 1058(a), 1059(a) (1982).

**17.** Trademark infringement is established by showing likelihood of public confusion regarding the owner of the mark. The protection afforded a trademark will depend on a number of factors including the strength of the mark, the similarity between the original and alleged infringing mark, the proximity of the products

or services, and the alleged infringer's good faith in using the mark. *Poloroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). CBS will have to show that the public would believe it sponsored or otherwise approved the use of the mark. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 204–05 (2d Cir.1979). This is an issue of fact based on the probable or actual reactions of the public. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). CBS has submitted a survey demonstrating public recognition of "Amos 'n' Andy," and some likelihood that a play entitled "Amos 'n' Andy Go To Hollywood" would be associated with the source of the Amos 'n' Andy radio and television programs. Baiman Affidavit at 2 & Exhibit A. However, the plaintiff is no longer using the name "Amos 'n' Andy" in his title and there may be considerably less public confusion regarding a play entitled "Fresh Air Taxi." Any significant public confusion is more likely to stem from the entire production than from just this title. Consequently, we decline to consider any claim of trademark infringement until the plaintiff actually presents his play.

**1358**

F.Supp. 861, 863 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir.1963).

> It is possible to be guilty of unfair competition even when trademark infringement is not present, if use of a similar but noninfringing mark or device is combined with unfair practices in a manner which is likely to deceive purchasers regarding the origin of goods under all the circumstances.

*Fotomat Corp. v. Photo Drive-Thru, Inc.,* 425 F.Supp. 693, 708–09 (D.N.J.1977). *See Jean Patou, Inc. v. Jacqueline Cochran, Inc., supra,* 201 F.Supp. at 865–66.

▆▆▆ Distinctive literary and entertainer characterizations can be protected under the law of unfair competition. 1 McCarthy § 10:19. The plaintiff has indicated a desire to evoke the nostalgia of the Amos 'n' Andy radio and television shows. Whether his ultimate production accomplishes this and, in so doing, is likely to deceive the public as to the source of the show, are issues of fact that cannot be decided at this juncture. We must, therefore, deny summary judgment on the defendant's third counterclaim. In addition, since a determination of this claim will depend on the characters as portrayed in the plaintiff's final production, this counterclaim is not ripe for adjudication and must be dismissed.

## D. *Dilution*

▆▆▆ CBS counterclaims for misappropriation of goodwill and dilution of its marks under New York's law of trademarks, service marks, and business reputation. N.Y.Gen.Bus.Law §§ 360 to 368–e (McKinney 1984). Section 368–d of that statute notes that a claim may be established even in the absence of likely confusion as to source.[18] However, CBS must demonstrate a blurring or a tarnishing of its marks. *Warner Bros. v. ABC* (II), *supra,* 720 F.2d 231 at 248. This will depend on (1) the validity of the marks, and (2) the plaintiff's finished product. If the abandonment issue is determined in CBS's favor, we must still await the plaintiff's production before deciding the dilution claim. Hence, we deny summary judgment on the defendant's fourth counterclaim and dismiss that claim as unripe.

## E. *Sanctions—Rule 11*

The plaintiff seeks Rule 11 sanctions against CBS for filing a frivolous and harassing summary judgment motion. We find no such harassment by CBS. Rather, it would not be unreasonable to impose sanctions against the plaintiff for seeking a declaration of his rights to produce a play that he keeps changing when confronted with CBS's allegations of infringement. Since CBS has not sought sanctions against the plaintiff, we will not impose any at this time. However, we will not allow the plaintiff to prolong this action indefinitely while he continues to revise his script in an effort to avoid further liability.[19]

---

**18.** Section 368–d provides as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y.Gen.Bus.Law § 368–d (McKinney 1984).

**19.** When the defendant moved to dismiss this suit for lack of a justiciable controversy, we noted that the plaintiff had made substantial preparations to produce his play and had a legitimate apprehension of being sued by CBS if he persisted in his endeavors. Thus, we deemed it appropriate to deny the motion and allow this declaratory judgment action to proceed. We have held herein that CBS has valid copyrights in the Amos 'n' Andy television shows and post–1948 radio shows, the latter of which the plaintiff has already infringed by creating and distributing his early script. The plaintiff, however, has already changed that script. We realize that plays are often not finalized until opening night. But, it is now apparent that, along with the script, the visual presentation and effect of the plaintiff's production will be a significant factor in determining whether the plaintiff is infringing CBS's copyrights or, if still valid, its trademarks in the Amos 'n' Andy shows. For just this reason, we find a lack of justiciable controversy in most of CBS's counterclaims. We are prepared to go forward with a trial on the only remaining factual issue, *i.e.,* whether CBS has abandoned its Amos 'n' Andy trade-

### III. CONCLUSION

The defendant's motion for summary judgment is granted in part and denied in part. The following summarizes our decision:

1. a) The *scripts* of the Amos 'n' Andy radio shows from 1928 to 1948 are in the public domain. CBS, however, retains valid copyrights in the radio broadcasts of those shows. The plaintiff may use the scripts without infringing CBS's copyrights. However, he could be liable for infringing other property rights owned by CBS, if CBS has not abandoned its Amos 'n' Andy trademarks.

b) CBS holds valid copyrights in the scripts and broadcasts of the Amos 'n' Andy radio shows created after August 1948. The plaintiff's script entitled "Amos 'n' Andy Go To The Movies" infringes CBS's copyrights. Consequently, we grant the defendant's motion for summary judgment on its first and fifth counterclaims for infringement of these works. The plaintiff is enjoined from distributing or reproducing his infringing script, and its copyright registration (no. PAu 000–029) is declared void.

c) CBS holds valid copyrights in the Amos 'n' Andy television shows. These copyrights include protection of the characters as they appeared on television. We cannot determine whether the plaintiff's work infringes these copyrights, because, until the plaintiff stages his proposed Broadway musical comedy, we cannot compare his characters' appearance with the originals. Consequently, we deny the defendant's motion for summary judgment on its first counterclaim, insofar as it alleges copyright infringement of the Amos 'n' Andy television shows, and dismiss this part of the first counterclaim, without prejudice.

2. The name "Amos 'n' Andy," the names and appearance of the characters, and other distinctive features of the Amos 'n' Andy radio and television shows, are protectable marks. However, a material issue of fact has been raised as to whether CBS has abandoned these marks. Accordingly, we deny CBS's motion for summary judgment on its second, third, and fourth counterclaims for trademark infringement, unfair competition, and dilution. Furthermore, these counterclaims must be dismissed as unripe. Only after the plaintiff presents his play will we be able to determine whether the characters or other aspects of the production actually infringe CBS's marks, blur or tarnish those marks, or confuse the public as to the show's source. Consequently, the defendant's second, third, and fourth counterclaims are dismissed, without prejudice.

3. We decline to impose sanctions against either party at this time.

SO ORDERED.

marks, if the plaintiff wishes that issue tried before proceeding with his production. However, that is the extent of the declaratory relief we will consider.